## Case No. 10,384.

### NUTTER v. WHEELER et al.

[2 Lowell, 346.][1]

District Court, D. Massachusetts. 1874.

BANKRUPTCY OF FACTOR—RECOVERY OF GOODS BY PRINCIPAL—PROCEEDS—CHANGE OF RELATION OF AGENT TO THAT OF PURCHASER.

1. The principal of a bankrupt factor may recover from the assignee any goods remaining unsold, or any proceeds of sale of such goods which the assignee has sold, or which can be specifically distinguished from the property of the bankrupt.
[Cited in Re Linforth, Case No. 8,369.]
[Cited in National Bank of Augusta v. Goodyear (Ga.) 16 S. E. 964.]

2. A consignee, by the terms of his agency, may be the agent of the consignor until the

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

consigned goods are sold; and, when they are sold, become, as between him and the consignor, the purchaser of and principal debtor for the goods sold.

Action of contract by the assignee in bankruptcy of A. S. Gear, to recover $627, alleged to have been received by the defendants [J. S. Wheeler and others] to the use of the plaintiff [Thomas F. Nutter]. The case was, by consent, tried by the court without a jury. The facts, as found by the judge, were these: The defendants were manufacturers of machinists' tools at Worcester, and Gear had a shop in Boston, where he sold such tools, among other things. The defendants were in the habit of sending their manufactured goods to Gear, and he sold them at such prices and to such persons and on such terms as he pleased, not less than the trade prices fixed by the defendants; whenever he had sold any tools, and not before, he was to pay the defendants, in thirty days, the prices shown in the list, less an agreed discount. The defendants had the right to sell any goods which at any time remained in his shop unsold, and he was permitted to sell any of their goods at the factory, and the defendants would then deliver them according to his order, and charge him with the trade price less the discount. Instead of paying in thirty days, Gear would sometimes give his note for the balance due; and the defendants held one such note at the time of his bankruptcy. In December, 1873, Gear ordered three drills to be sent by the defendants, from their factory at Worcester, to the New York Central Railroad Company, at three different machine-shops of that company, in the state of New York. They were sent, and a bill was made out to Gear, as the purchaser, for the trade price of $600, less fifteen per cent., and sent him in a letter, in which the defendants say they had taken off fifteen per cent. and hope to get the cash in thirty days. In January, 1874, Gear failed; and the defendants took back the tools of their manufacture, then in his shop in Boston, unsold. In February, 1874, Gear went into bankruptcy, and at the first meeting of creditors the defendants proved against his estate for the amount of his note, above mentioned, and for the price of the three drills. J. S. Wheeler, one of the defendants, was chosen assignee. Finding that the railroad company had not paid Gear for the drills, the defendants collected the price, giving to the company the receipt of J. S. Wheeler, the assignee. Wheeler afterwards resigned his trust as assignee. This suit was brought by the successor of Wheeler, as assignee, against the firm of J. S. Wheeler & Co., for money had and received. The defendants filed a petition to amend their proof, as having been made by mistake of fact and law.

E. Avery and T. F. Nutter, for plaintiff.

N. Morse and A. Jones, for defendant, cited Barry v. Page, 10 Gray, 398; Audenried v. Betteley, 8 Allen, 302; Lerned v. Johns, 9 Allen, 419; Swan v. Nesmith, 7 Pick. 220.

LOWELL, District Judge. It has been settled for a very long time that, upon the bankruptcy of a factor, his principal may recover from the assignees any of the goods remaining unsold, or any proceeds of the sale of such goods which the assignees themselves have received, or which remain specifically distinguishable from the mass of the bankrupt's property. The action may be brought at law as well as in equity, subject, of course, to the factor's lien for advances or commissions (Scott v. Surman, Willes, 400; Ex parte Chion, 3 P. Wms. 187 note; Kelley v. Munson, 7 Mass. 319; Tooke v. Hollingworth, 5 Term R. 215); and it makes no difference that the factor acted under a del credere commission, or sold the goods in his own name (Thompson v. Perkins [Case No. 13,972]; Barry v. Page, 10 Gray, 398; Audenried v. Betteley, 8 Allen, 302).

A like doctrine is applied to bankers, who, if they have received notes or bills from their customers and have not discounted them, will not usually be held to have acquired the property in them; and if the banker becomes bankrupt, his assignees are liable to the customer for the bills, or their distinguishable proceeds, subject to the lien for advances. Thompson v. Giles, 2 Barn. & C. 422; Ex parte Barkworth, 2 De Gex & J. 194; Stetson v. Exchange Bank, 7 Gray, 425.

The important question, therefore, in this case is, whether the defendants and Gear stood in the positions, respectively, of principal and agent in this transaction of the sale of three drills. Upon the first view of the correspondence and the acts of the parties, it appears a simple case of sale to Gear of goods delivered to a third person at his request. And the defendants found some difficulty in stating their case in such a way as to take it out of this category. In their application to withdraw this part of their proof in bankruptcy, they say it ought to have been put, not as a sale, but as a consignment or delivery of the drills to Gear, or his order, for sale by him on their account, on commission. It was not a consignment, certainly, and Gear never for an instant had the possession or property, general or special, of the goods.

The defendants, however, appeal to the course of business between the parties to prove that it was a sale on commission. The bankrupt and the defendants, being examined as witnesses, disagreed about the conversation which took place at the beginning of the business connection between them; but the very voluminous correspondence shows clearly enough what the actual mode of dealing was. And it is plain that the goods sent to Boston by the defendants, from time-

to time, remained their property until they were sold, and that when a sale occurred Gear became immediately the debtor at a fixed price. and was bound to pay at a definite time, and that he never consulted with them about terms or purchasers, or any thing else, except the variations of the trade price; never accounted to them or was expected to account as agent, or was subject to their directions, excepting as to the tools remaining in his hands undisposed of. As to those goods sent to Boston, he may be described as a bailee, having power to sell as principal. Until a sale was made, the property in the goods remained in the defendants, and they were well justified in reclaiming those which remained on hand at the time of the failure of Gear.

But after the goods were sold, the agreement appears to have been that Gear's credit only was looked to. Perhaps there were conveniences in this mode of conducting the business. Whatever profit or loss Gear might make, or whatever credit he might give, the defendants had a fixed price and a fixed time of payment. He never consulted them about his sales, or rendered any account of sales. The prohibition against selling below the trade price is a very common one between a manufacturer and those who buy of him to sell again, and is intended to prevent a ruinous competition between sellers of the same article. I have often known this arrangement to be made by a patentee and his various licensees. It has but little tendency to prove agency.

The question of agency is mooted usually either between the principal and the third person, or between that person and the supposed agent; but the real inquiry in all the cases is, whether the credit was given to the person sought to be charged by the person seeking to charge him. Thus, when the defendants were suing the railroad company, the liability depended on the fact of credit having been given them by the defendants, either directly or through their agent, Gear. The terms of the sale by Gear to the company were not proved, but it was taken for granted by both parties that he sold as a principal; and that this was so, is shown by the fact that the company insisted upon the receipt of his assignee.

I will now examine some adjudged cases. Where a trader, having a contract with government to supply a large amount of candles, asked a friend, who had candles of the required quality, to accommodate him with some, which the friend assented to, provided the bills should be made out in his name; and the trader delivered the candles (as the court inferred) in his own name, and his assignees in bankruptcy received the price; it was held they must pay it in full to the owner of the candles. Ex parte Carlon. 4 Deac. & C. 120. But it was taken for granted by the judges, that, if the owner had intended to trust the trader's credit, he could not have intervened after the bankruptcy, but must have proved against the assets as for goods sold.

So, in the cases about bankers, it has been said that if the agreement were that the bills should be the property of the banker, then, whatever might be the hardship of the particular case, his assignee in bankruptcy could hold them. See remarks of Eldon, L. C., in Ex parte Sargeant. 1 Rose, 153, explained in Ex parte Barkworth, 2 De Gex & J. 194.

The late English case, Ex parte White, 6 Ch. App. 397, is on all fours with this. With a change of names, the course of dealing described in that case would do for this, in respect to the goods sent to Gear and sold by him in Boston; and the precise question came up, whether, after the goods had been sold, the bankrupt was to account as agent. The court decided that the agency continued only up to the time of selling the goods; and, when they were sold, the bankrupt himself became the purchaser, as between him or his assignees in bankruptcy and the consignor of the goods. The learned justices say that this mode of conducting business is a usual one, of great convenience to the parties, and they carefully and ably distinguish the contract from one of a sale by an agent, even with a del credere commission. That case was to be taken to the house of lords, but I cannot find that it has been decided there. Whatever may be its fate in that court, I consider the decision of the lords justices a sound one.

The case of Audenried v. Betteley, 8 Allen, 302, has been cited by the defendants. There the plaintiffs agreed to "stock" the wharf of the bankrupt with coal and wood, and the bankrupt was to make sales at prices fixed by the plaintiffs. He agreed to carry on no other business; to keep books which should always be open to the inspection of the plaintiffs; to guarantee the sales; to account monthly, &c. The contract was evidently drawn with a view to keep the whole business under the plaintiffs' control, without making them liable for the debts of the bankrupt; and in providing for these objects it ran some risk of making the bankrupt a mere purchaser. But the court held that he was an agent. That case differs from the case at bar as much as the English case resembles it. Here, none of the circumstances are found from which an agency was there inferred. Gear did not render an account of sales; did not agree to guarantee sales, nor to keep books, nor to sell at prices to be fixed by the defendants, excepting as to the minimum, which has been already explained.

If the relation of the parties was such as I have considered it, then, even as to the goods which had once been consigned to Gear, he should be considered as the purchaser, subject only to the understanding that he was neither the owner of them, nor liable to pay for them until he had succeeded in finding a purchaser;

but when he did sell, he immediately became the principal, and the defendants ceased to have the rights of a consignor, and could not follow the goods or their proceeds as undisclosed principals.

If this is so, then the transaction now under review, which, standing alone, appears to be a sale to Gear himself, and not a sale through him as agent, is not shown to be any thing else by the course of trade between the parties. But even if the goods which had once been consigned to Gear should be held to be sold by him as agent or factor, I doubt if such sales as this could be so considered.

The defendants, then, have collected money which belonged to the estate of Gear. They collected it by action; but as they had no right to collect it, they cannot deduct the expenses, unless they would have been necessary and proper costs of a recovery by the assignee if he had brought the action. In the settlement with the railroad company they were obliged to give the receipt of one of the firm as assignee, and there is no evidence that he could not have had the money in the first instance upon such a receipt. The expenses, therefore, were incurred in their own wrong. They must pay to the present assignee the price the railroad gave for the drills, which I understand to be $610.

Judgment for the plaintiff.

