FURST BROTHERS *v.* COMMERCIAL BANK OF
AUGUSTA *et al.*

1. If one agrees with another to send him goods for the latter to sell or return,. the title passes and the goods are the property of the latter until he exercises his option to return them. If, however, there is an agreement between the sender of the goods and the receiver that there shall be no sale but the receiver is to sell the goods and account to the sender for the proceeds of the sale, the receiver does not acquire the title, but is a mere bailee of the goods.
2. It follows that if the receiver of the goods had, prior to the last-mentioned agreement, given a mortgage to a third person which covered his stock of goods, and had become insolvent, and the mortgage had been foreclosed, the goods sent under the agreement were not subject to the mortgage, but were the property of the bailor.

Argued February 24,—Decided March 19, 1903.

Intervention. Before Judge Brinson. Richmond superior court July 18, 1902.

Citations by counsel, other than those in the opinion : 1 Mech.. Sales, §§ 20, 24, 46-50, 675-8, 681-2 ; Benj. Sales (4th Am. ed.), 8, 422, note, § 913 ; Story, Sales, § 249 ; 9 Wall. 50 ; 2 Wall. 728 ; 10 Wall. 367 ; 11 Wall. 566 ; 105 Mass. 237 ; 111 Pa. St. 589 ; 6. Mackey (D. C.), 255 ; 3 Am. & Eng. Enc. L. (2d ed.) 740 ; 21 Id. 514, 519 ; 36 L. R. A. 285 ; 9 Pick. 441, 20 Am. Dec. 489 ; 49 Conn. 441, 44 Am. Rep. 417 ; 57 Conn. 407 ; 18 N. Y. 363 ; 28 Vt. 582 ; 44 Pa. St. 441 ; 52 Conn. 205, 52 Am. R. 583, 586 ; 104 Mass. 262.

*W. H. Barrett,* for plaintiffs. *E. H. Callaway,* for defendants.

SIMMONS, C. J. The Commercial Bank of Augusta filed an equitable petition to foreclose a mortgage against the Georgia Grocery Company. A receiver was appointed to take charge of the assets of the defendant company. Furst Brothers intervened,. and prayed the court to turn over to them 4½ barrels of whisky of which the receiver had taken possession. To this intervention the bank and the receiver demurred. The court sustained the demurrer, and the intervenors excepted. From the petition of the intervenors and the exhibits thereto it appeared that in December, 1900, the president of the company which was the predecessor of the Georgia Grocery Company was authorized to execute a mortgage to secure an indebtedness to the bank. In pursuance of this authority he executed an instrument which, for the purposes of

this decision, may be treated as a mortgage.    The mortgage was upon a certain stock of goods, changing in specifics.    This mortgage was foreclosed by the bank in April, 1902, the receiver taking possession of the stock of the grocery company, including the whisky here in controversy, and refusing to deliver this whisky to Furst Brothers upon their demand.    After the execution of the mortgage, but prior to the institution of the proceeding to foreclose it, the salesman of the intervenors placed five barrels of whisky with the grocery company.    By agreement of the parties this whisky was to be placed on sale by the grocery company, and, if sold, was to be paid for when sold; if it was not sold and the officers of the grocery company did not think it could be sold, Furst Brothers were to be given back all of this whisky, or such part of it as remained, paying the return freight.    It was expressly agreed that the transaction was not to be considered a sale, and that the grocery company was not to be called upon to settle the bill, if the goods were still on its hands.    There was to be nothing due for the whisky until it was sold by the grocery company.    The whisky, when shipped to the grocery company, was invoiced at four months, 4% off for cash.    In the intervention it was claimed that this whisky had not been sold to the grocery company, but had been sent on consignment, and that the title had never passed.    It was further alleged that there was no whisky in the stock mortgaged, and that, while the addition of the whisky did not increase the value of the stock but represented the proceeds of the sales of other goods, still the whisky was not covered by the mortgage.    It was therefore claimed that, even if the transaction were treated as a sale and not a consignment, the whisky was subject to attachment for the purchase-money.    The bank and the receiver demurred on the grounds: that no cause of action was set out in the intervention; that it showed that the whisky was the property of the grocery company and subject to the mortgage; that the transaction amounted to a sale with a reservation of title, such reservation of title being invalid as against the bank, because it had not been reduced to writing or recorded as required by statute and the bank had never had notice of it; and that the rights of the bank and of the receiver were superior to those of the intervenors.

The judge was correct in ruling that the intervention was insufficient to show that the intervenors were entitled to an attach-

ment for purchase-money.    He should, however, have overruled the demurrers to that part of the intervention which was based on the theory that the title to the goods was still in the intervenors. We need not consider the question argued here as to whether the mortgage was sufficiently comprehensive in its terms to cover such whisky as might be in the stock of the mortgagor.    If this particular whisky was the property of the intervenors, then the mortgage certainly could not affect their rights; for this whisky was not delivered to the grocery company until after the execution of the mortgage, and the bank could not have extended the credit upon the faith of the grocery company's possession.    If, on the other hand, this whisky was not the property of the intervenors but of the grocery company, then the intervenors, having shown no right to attach for purchase-money, had no right to contest the possession of the receiver, that being a matter between the receiver and the grocery company.    The vital question in the case is, then, whether the title to the whisky had passed into the grocery company so as to become subject to the lien of the mortgage.    In deciding this question we attach no importance to the fact that the parties may have called the transaction a "consignment;" the facts showing the intention of the parties must determine the nature of the transaction, — not the terms by which they characterized it.    Nor are the terms of the invoice at all conclusive that there was a sale.    "An invoice is not a bill of sale, nor is it evidence of a sale.    It is a mere detailed statement of the nature, quantity, and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale. . . Hence, standing alone, it is never regarded as evidence of title."    Dows *v.* Bank, 91 U. S. 630.    Such invoices "are admissions which are not absolutely binding.    They may be explained and put to silence by all the facts and circumstances characterizing the true import of the dealings to which they refer.    Thompson *v.* Barnum, 49 Ia. 392." *National Bank* v. *Goodyear*, 90 *Ga.* 729.    In cases of this character it is often difficult to determine whether the contract of the parties constitutes a sale or a bailment.    The contract may not constitute a sale but be a bailment with an option on the part of the bailee to buy.    Or it may be a sale with an option on the part of the vendee to return the goods, such a contract being termed a contract of sale or return.    "An option to purchase if he liked is

essentially different from an option to return a purchase if he should not like. In the one case the title will not pass until the option is determined; in the other the property passes at once, subject to the right to rescind and return." Hunt v. Wyman, 100 Mass. 198. If the owner of goods deliver them to another with the understanding that there is to be no sale until the happening of a certain condition, this is a bailment, and the title does not pass until and unless the condition happens. If the goods be delivered with the understanding that, under certain circumstances, the vendee may return them, this is a conditional sale, and title immediately passes, although, under the contract, the vendee may subsequently have the right to rescind the contract and return the goods. In the one case the condition is precedent, in the other subsequent. See Sturm v. Boker, 150 U. S. 312; *Wiggins* v. *Tumlin*, 96 *Ga.* 753. Under a contract of sale or return, the title passes and remains in the vendee until the option to return is exercised. If no particular time is fixed for the return, then a reasonable time is allowed; if a particular time is fixed, the return must be made within that time. *Newburger* v. *Hoyt*, 86 *Ga.* 508. A bailee with an option to purchase does not become a purchaser until he has exercised the option. "The right of a bailee to purchase on his own account at a fixed price, coupled with the duty of accounting also at a fixed price for any sales actually made, will constitute him a purchaser only as to the property covered by his actual sales, and leave his original character as bailee unchanged with respect to that part of the property which remains unsold. Nutter v. Wheeler, 2 Lowell, 346. It may be that this rule should be confined to cases in which . . . no credit has been extended to the bailee on the faith of the consignment." *Powell* v. *Brunner*, 86 *Ga.* 531.

In the present case it was expressly agreed between the parties that there was to be no sale unless the goods were sold by the grocery company. No time was fixed within which this condition was to be met. In the event of a sale of the goods by the grocery company, it was to pay the intervenors for them. The sale by the grocery company was a condition precedent to its becoming a purchaser, and until the terms of the condition were met it was a bailee merely. As such it could, under the terms of the agreement, sell the goods to its customers and pass the title; for such a right is not inconsistent with its position as bailee. We consider

this case very different from one in which, upon the happening of a condition subsequent, return of the goods may be made and the contract of sale rescinded.     In the latter case the relation of vendor and vendee arises immediately, but is subject to change upon the happening of the condition.     Here the condition is precedent, and until it happens, as we have said above, the relation of vendor and vendee does not and can not arise under the contract.     For these reasons we think that the intervention sufficiently showed the intervenors' title to the whisky, unaffected by the lien of the mortgage, and that the court erred in sustaining the demurrer.

*Judgment reversed.     By four Justices.     Lamar, J., disqualified.*