## 4235.  FEDERAL RUBBER COMPANY v. KING.

1. The trial judge properly construed the contract as one of agency, and held that the reservation of title, in the memorandum of agreement upon which the plaintiff mainly relied for proof of an agency, did not evidence a contract of conditional sale. "If the owner of goods deliver them to another with the understanding that there is to be no sale until the happening of a certain condition, this is a bailment." *Furst* v. *Commercial Bank*, 117 *Ga.* 474. Under the terms of the contract between the defendant and the opposite party to the agreement, the latter never became the purchaser of any of the defendant's goods, except such as ne might sell and pay for within thirty days; and as every other stipulation of the contract plainly bespeaks agency, the permission granted to the bailee to purchase at the invoice price, less a fixed discount on such goods as he might sell, is colored, in construing the contract as a whole, by other features of the instrument, greater in number and controlling in their effect.

2. The evidence supports the conclusion that the seller of the automobile tires, as agent of the defendant, was authorized to make the warranty, for the breach of which the plaintiff recovered.

DECIDED FEBRUARY 11, 1913.

Appeal; from Fulton superior court—Judge Bell. · April 8, 1912.

*Anderson, Felder, Rountree & Wilson,* for plaintiff in error.

*Walter A. Sims,* contra.

RUSSELL, J.  The decision of this case in the court below depended entirely upon the construction of the contract, and the plaintiff in error insists that the trial judge erred in two respects in the construction which he gave it. We are of the opinion that the judge properly construed the contract, and that the evidence as a whole amply supports the finding. of the jury. The plaintiff sought to recover for breach of an express warranty alleged to have been made by an agent of the defendant. There is no dispute that the warranty was made. The two real questions in the case are:  (1) Was the Dunham Rubber Company, which made the warranty, the agent of the defendant, the Federal Rubber Company?  And (2) even if such agency existed, was the judge authorized to submit to the jury the question as to whether the warranty was within the scope of the agent's authority; and did the evidence authorize the jury so to conclude?

The Dunham Rubber Company sold to the plaintiff (King) certain rubber automobile tires and tubes, with the express warranty that they would run 3,500 miles and would not "blow out." The defendant claims that the Dunham Rubber Company was not

its agent, and that even if that company was its agent, the agent had no authority to make such a warranty. As a part of his case the plaintiff put in evidence a contract between the Dunham Rubber Company and the Federal Rubber Company, dated November 10, 1909, and the trial judge construed this agreement as a contract of agency, and not as a contract of conditional sale. In this instrument the Dunham Rubber Company agrees "to handle and push the sale of automobile casings, automobile inner tubes, and such other goods as are manufactured by the party of the second part," "to carry no other tire or tube in stock other than manufactured by the party of the second part, and  .  .  to push the sale of and energetically and faithfully endeavor to advance the interests of the party of the second part, by selling its products to the exclusion of other competitive makes," to place the name of the Federal Rubber Company on its windows, in large letters, "calling the trade's attention that the party of the first part is the agent for the party of the second part's goods." It is further stipulated that "in view of a certain advertising appropriation which the party of the second part has appropriated for local advertising," the Dunham Rubber Company would "spend an equal amount" advertising the Federal Rubber Company's goods. As to the precise terms upon which the supplies of the Federal Rubber Company's casings and tubes shall be held, the contract stipulates that the Federal Rubber Company "agrees to consign a sufficient stock of Federal tubes and tires of salable sizes" of such amount and value as it shall itself determine, and the absolute title to the goods so consigned is to remain in it, and the goods are to be billed to the Federal Rubber Company in care of the Dunham Rubber Company. The Federal Rubber Company also stipulates that it will itself insure the goods consigned to the Dunham Rubber Company and pay the cost of such insurance.

The only clause which has any appearance of being inconsistent with the stipulations so far enumerated, and all of which clearly evidence a bailment, is that which refers to what is denominated the terms of sale. In this clause of the contract it is provided: "On the 10th day of each month the party of the first part agrees to pay in cash, by check or New York draft, for all goods sold for the preceding thirty days, allowing five per cent. discount for cash. These terms are irrevocable, and under no conditions will the party of the second part continue this agreement, if the terms of sale, as

outlined above, are not lived up to as agreed." However, immediately following this provision of the contract, which relates to the settlement for such goods as the Dunham Rubber Company may dispose of, is a provision which clearly imports a bailment, because the Dunham Rubber Company is thereby required, and agrees, to furnish the Federal Rubber Company by mail, every day, a complete record of each tire and tube it may sell, and a complete inventory is to be made and balance struck every thirty days. Furthermore, it is provided that though the Dunham Rubber Company has authority to make adjustments on tires which have not given complete satisfaction, a final decision must at all times be rendered by the party of the second part. The remaining stipulations in the contract, guaranteeing the Dunham Rubber Company that the price at which it is to be furnished with supplies shall be the minimum price allowed any one else, providing for a rebate in case the sales amount to so much, and defining the territory in which the Dunham Rubber Company is permitted to sell, are perhaps not so material toward illustrating the proper construction of the contract, but each of these suggests that the parties, at the time, understood the agreement as nothing more than one under which the Dunham Rubber Company was to act as agent of the Federal Rubber Company, without conflicting with any of its other agents, and receive as compensation for its services the difference between the price the Dunham Rubber Company got for the supplies furnished it by the Federal Rubber Company, and the minimum price guaranteed by the Federal Rubber Company, plus an additional profit which would be represented by the five per cent. discount, and an additional ten per cent. discount (provided for in an addendum to the contract), and a probable stipend to be derived by the Dunham Company as additional compensation in case its sales amounted to more than $25,000 per year.

1. There is no better settled rule as to the construction of contracts than that where the construction of any part is involved in doubt, an understanding of its meaning is to be sought in the light afforded by the meaning of all the other parts of the instrument. Even if one part of the contract is somewhat repugnant to the remaining portions, the true meaning of the contract as a whole is to be ascertained and enforced. And so, looking to the several portions of this contract, we think it clear that the trial judge

properly construed it as a contract of bailment, and properly adjudged that the goods were merely consigned to the Dunham Rubber Company for sale on account of the Federal Rubber Company, notwithstanding the clause upon which the plaintiff in error relies, and which we have quoted above. But even if the stipulation of the contract which we have quoted be given the construction for which the plaintiff in error contends, and be treated as a stipulation by virtue of which the Dunham Rubber Company became the purchaser of such supplies as it sold, this would not illustrate the relationship which the Dunham Rubber Company, under the contract, sustained to the defendant, nor be repugnant to the idea that it was, to all intents and purposes an agent, and nothing more, in the general scope of the business, even though, after it had forwarded the agreed list price of the particular article, and had mailed an original record of the sale to the Federal Rubber Company, it was no longer liable to account to the Federal Rubber Company for that particular article.

It is sometimes quite difficult to determine whether an instrument is a contract of bailment or one of conditional sale. This fact was pointed out by Justice Fish, in *Snelling* v. *Arbuckle,* 104 *Ga.* 362, as well as by Chief Justice Bleckley in *National Bank* v. *Goodyear,* 90 *Ga.* 727. In the *Snelling* case, in which the contract was construed to be one of sale and the decision turned upon the liability of one Allen to pay for the goods unconditionally, Justice Fish said (p. 374) : "The great fact which characterizes the case now under consideration is, that Allen made himself unconditionally liable to pay for the goods at the end of sixty days 'whether they were sold or unsold;' and his liability was absolute from the moment he received the goods, the consignors not being obliged to do anything, after that time, to force him to retain them as a purchaser." In the case at bar the contract is silent as to what disposition is to be made of any of the automobile supplies which may be on hand at the termination of the contract, and, in fact, no time is provided for the termination of the contract which is not dependent upon some breach of its conditions. In *McKenzie* v. *Roper Wholesale Grocery Co., 9 Ga. App.* 185, Judge Powell alluded to the difficulty at times in determining whether a contract is a conditional sale or some other form of bailment, but at the same time admirably defined a test by which they are to be dis-

tinguished, and which this court has adopted, to wit, that one can not be deemed to be the purchaser of property delivered to him unless the circumstances be such that the person parting with the possession can sue for the price irrespective of whether the person to whom possession is delivered has sold or otherwise disposed of the goods. "If the effect of the contract is that the property is delivered from the bailor to the bailee with the understanding that the title is to remain in the bailor, and the bailee does not assume initial responsibility to pay the purchase-price, it is ordinarily not a conditional sale, but is a consignment, although the bailee may have the option of purchasing the goods by paying a stipulated price, or may have a right to sell them to other persons upon accounting to the bailor for a stipulated sum, and though the bailee's compensation in the matter may depend upon such profit as he shall realize on the difference between the price at which the goods are consigned and the price at which they are sold, and though the bailee may be responsible to the bailor for the value of such goods as he may sell on credit, whether he collects from the purchasers or not." The whole question is whether the ostensible purchaser assumes liability for the purchase-price at the time the goods are received, subject only to the purchaser's right to plead either partial or total failure of consideration.

We think, too, the ruling of the trial judge is in accord with the decision of the Supreme Court in *National Bank* v. *Goodyear*, supra. In fact the insurance feature in the present case is a stronger indication of consignment than in that case, because in the case at bar the Federal Rubber Company agreed to insure the property placed in the Dunham Rubber Company's possession, whereas in the *Goodyear* case the petitioner, who was alleged to be the consignee only, was to keep the goods insured, and in addition assumed all risk of damage from any cause whatsoever. Applying the rule of construction used by Chief Justice Bleckley in that case, that, "in determining the nature of a contract we should look to how it would work in practice, on the assumption that its terms were complied with on both sides according to the true intent and understanding of both parties," it is plain that, according to the provisions of the contract in the present case, it was not the purpose of either party that the Dunham Rubber Company should ever become the owner of a single tire or tube, but its relation to

the Federal Rubber Company was to be and remain that of bailee and agent for the making of sales, receiving the proceeds and paying over the same, less its share thereof, to the consignor, and (to use the words of Judge Bleckley) "the latter was to be and remain the sole owner until the sale, and then instantly become the sole owner of the proceeds." The fact that in that case the contract stipulated that the consignor was to be paid the price in cash, immediately after the sale, would not distinguish it from a contract similar in every other respect except that thirty days was fixed as the limit in which the remittance for the purchase-price could be made; for if the alleged vendor was really the consignor, the purchase-price of any article sold would be the property of the consignor while in the hands of the consignee, whether the period of time during which it was held by the consignee was short or long. In *Furst Brothers* v. *Commercial Bank of Augusta*, 117 *Ga.* 472-475, the Supreme Court quotes with approval from Nutter *v.* Wheeler, 2 Lowell, 346, the principle which we think controls the decision that the contract involved in the present case is a bailment under which the Dunham Rubber Company must, as to third parties dealing with it in respect to the goods of the Federal Rubber Company, be held to be agent of the latter: "The right of a bailee to purchase on his own account, at a fixed price, coupled with the duty of accounting also at a fixed price for any sales actually made, will constitute him a purchaser only as to the property covered by his actual sales, and leave his original character as bailee unchanged with respect to that part of the property which remains unsold."

2. The second question presented for determination is whether, conceding that the Dunham Company was the agent of the Federal Rubber Company in the sale of automobile tires to the plaintiff, an express warranty such as that testified to by the plaintiff was within the scope of the agent's authority. The plaintiff in error makes the point that the trial judge should have construed the contract upon this point, and not left it for the jury to decide whether the warranty to which the plaintiff testified was within the scope of the agent's authority. It is true that it is ordinarily the duty of the judge to construe the contract as a whole and to construe any part of it which may be necessarily involved, but we can not say that the judge erred in leaving it to the jury to say whether the

contract in the present case authorized the agent to make the warranty upon which the plaintiff's cause of action depended. In the first place, if there was any ambiguity in such portions of the contract as related to this subject, the matter should have been referred to the jury. And even though it should not have been referred, and the judge should have construed the contract himself, still if the jury, without instructions, properly construed the contract themselves, the omission of the judge can not be held to be harmful error.

We think the terms of the contract may be so construed (especially in view of the extraneous evidence which the jury might consider in clearing any ambiguity as to the true meaning of the contract) as to include at least one of the warranties given by the selling agent of the automobile tires to the plaintiff. The plaintiff was entitled to recover for such damage as he might have sustained, consequent upon the breach of either of the warranties. It was not necessary to prove loss upon both breaches. The Dunham Rubber Company, in the contract, agreed to push the sale of the Federal Rubber Company's tires and tubes, and energetically endeavor to advance its interests, to the exclusion of other competitive makes, and the Federal Rubber Company agreed to furnish the Dunham Rubber Company with advertising matter. The advertising matter was introduced in evidence, and this advertising matter (coming from the Federal Rubber Company's agent) was apparently the advertising matter referred to in the contract, in which the statement was made that "Federal tires won't blow out." The evidence was sufficient to authorize the jury to infer that this was a warranty of the principal; and the principal would, as a matter of course, not only authorize, but expect his agent to make the same statement. And so, even if the jury may not have been satisfied that the proof sufficiently established the authority of Dunham Rubber Company to warrant that the tires would run 3,500 miles, they could have awarded the plaintiff damages for breach of the contract of warranty that the tires would not "blow out."

*Judgment affirmed.*