### In re THOMAS.

### In re CHASE–HACKLEY PIANO CO.

#### (District Court, S. D. Georgia.  March 20, 1916.)

1. SALES &8—DELIVERY OF GOODS FOR SALE—CONSTRUCTION OF CONTRACT— BAILMENT OR "CONDITIONAL SALE."

A contract under which goods are delivered to another for sale, the receiver not being absolutely bound to pay for the same, is one of consignment, and a mere bailment; and the fact that the receiver of the goods may fix the selling price, or retain the difference between such price and the price at which they are billed to him, and is also required to pay

insurance, storage, freight, and other expenses, does not make the contract one of sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. ☞8.

For other definitions, see Words and Phrases, First and Second Series, Conditional Sale.]

2. SALES ☞8—DELIVERY OF GOODS FOR SALE—CONSTRUCTION OF CONTRACT.

A provision of such a contract, binding the receiver of the goods to pay for such as shall remain unsold for a certain length of time at the option of the other party, does not divest the contract of its character as a bailment or consignment, even as to goods which are unsold at the end of such time, unless the option has been exercised.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. ☞8.]

3. BANKRUPTCY ☞140(1)—PROPERTY PASSING TO TRUSTEE—GOODS HELD ON CONSIGNMENT.

Under the law of Georgia, consignment contracts are not required to be recorded, and the fact that goods in possession of a bankrupt in that state at the time of his bankruptcy were held by him on consignment, and not as owner, does not operate as a fraud on his creditors, nor deprive the real owner of title, although the contract was not recorded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

4. SALES ☞8—DELIVERY OF PROPERTY FOR SALE—CONSTRUCTION OF CONTRACT—BAILMENT OR CONDITIONAL SALE.

A contract under which pianos were delivered to a bankrupt for sale construed in its entirety, and held one of consignment, and not of conditional sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. ☞8.]

5. CONTRACTS ☞170(1)—PRACTICAL CONSTRUCTION OF CONTRACT BY PARTIES.

Where, during the entire course of business between the parties to a contract, it was treated as one of consignment, and not of sale, their construction is entitled to consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. ☞170(1).]

In Bankruptcy. In the matter of A. A. Thomas, bankrupt. On review of order of referee dismissing petition of the Chase-Hackley Piano Company. Reversed.

The Chase-Hackley Piano Company filed its petition with the referee, in which it alleged that on January 27, 1914, it entered into a consignment contract with A. A. Thomas, the bankrupt, under which it shipped to him on February 2, 1914, 14 pianos, all of which were disposed of by said bankrupt before bankruptcy, except 4 (giving the numbers of same), and that said pianos were in the possession of the bankrupt at the time of his adjudication, and afterwards passed into the possession of Abram Levy, trustee of the bankrupt; "that during the entire period of the business between petitioner and said Thomas under the aforesaid contract, both parties always treated the goods as consigned goods, and they were dealt with as such"; that petitioner had demanded of the trustee possession of the said pianos, and that delivery thereof had been refused. Petitioner prayed for an order directing the trustee to deliver the pianos to it. Attached to the petition was a copy of the contract in question, the same being as follows:

"No alterations of this contract will be accepted.

"Chase-Hackley Piano Company, Muskegon, Mich.—Gentlemen: (1) In consideration of your furnishing us with pianos on consignment, we agree to sell

them in Augusta, Ga., and vicinity on the following conditions: All pianos that are now or shall hereafter be furnished us by you are to be held upon consignment and sold on such terms as you may direct.

"(2) All money, notes, or other property received on sale of any piano shall belong to you. Customers' notes or leases shall be made on blanks furnished by you, payable to your order, secured by lien on the instrument sold, and subject to your approval. All notes and leases shall bear interest at the rate of not less than 6 per cent. per annum, or we will pay the difference to that amount from our commission. We will indorse all such notes and leases, guarantee payment at maturity, and hereby waive protest and notice of protest on the same at your option.

"(3) We agree to sell all instruments within four months from date of shipment, or pay interest after that time at the rate of 6 per cent. per annum on the invoice price; but it is expressly understood that the charge of said interest and the payment thereof shall in no sense be construed as indicating a sale of said instrument to us. If any piano is unsold six months from date of shipment, I agree to pay for same at your option.

"(4) For the purpose of forming a basis upon which our compensation is to be fixed for the sale of said instruments, we direct you to bill same to us at the prices you have given us, and which prices and values we will account to you for; and we agree that our compensation and commission hereunder shall be such sum or sums as we may sell said instruments for in excess of the price at which they are billed as above. Our commission on cash sales shall be due and payable when you receive your pay for the instrument. On time sales, you to pay us all of first payment, provided it does not exceed $50 of our commission. It is further agreed that, when the first payment is less than $50, we are to retain the subsequent payments to the amount of $50, providing we collect the said $50 in four months from date of sale.

"(5) Balance of commission to be paid as you receive money from the purchaser, after you have received the invoice price of the piano in cash, together with the interest thereon, provided you have no claim against us for other indebtedness; it being understood and agreed, however, that you are to have in your possession collaterals of the face value of at least 25 per cent. more than the total net value of consigned goods which we may have sold at that time.

"(6) All instruments taken back from customers on account of default of payments, or for other causes, and all new or secondhand instruments taken in exchange, or in part payment for instruments consigned by you, are to be regarded the same as goods consigned, and to be accounted for in the same manner. We will send you a statement the 1st day of each and every month of all instruments received and sold, and remaining on hand unsold, and make prompt returns as sales are made.

"(7) Upon your demand, or that of your agent, we will deliver as you may direct, free of charge or expense of any kind to you, any and all of said goods remaining unsold at the time of said demand, including the original packing cases for same. All goods returned to you to be passed to our credit at 90 per cent. of original bill, the balance, 10 per cent. being deducted for depreciation and shop wear of goods, except instruments which have been taken in exchange or trade from customers for default in payment on notes or leases, such stock to be credited at a fair cash value, to be determined by you. We agree to pay all freight, taxes and expenses, including attorney's fees, court costs, and any other charges to which you may be put in taking possession of any instrument or making collections, and to insure all stock against loss by fire, loss payable to Chase-Hackley Piano Company.

"This agreement may be terminated at any time by either party, and any stock on hand will be subject to your order.

"[Signed]   A. A. Thomas Piano Co.,
"A. A. Thomas.

"Sir: Your contract or proposal, as above, we accept.

"[Signed]   Chase-Hackley Piano Co.,
"Per H. B. Bradley."

To this petition the trustee demurred on the following grounds: (1) That it is apparent from the petition that the Chase-Hackley Piano Company has no

title to the pianos in question; (2) that the transaction between the petitioner and the bankrupt was a conditional sale and the contract not having been recorded, petitioner cannot recover the pianos; and (3) that under the contract between the petitioner and the bankrupt the bankrupt became absolutely bound to pay for the unsold pianos at the expiration of six months.

The referee sustained the demurrer and dismissed the petition, and the Chase-Hackley Piano Company filed a petition to review this order of the referee.

W. H. Barrett, of Augusta, Ga., for Chase-Hackley Piano Co.
W. K. Miller and J. S. Bussey, Jr., both of Augusta, Ga., for trustee.

LAMBDIN, District Judge (after stating the facts as above). The case before me is upon a petition filed by the Chase-Hackley Piano Company for the review of an order of the referee dismissing upon general demurrer its intervention, wherein it asked that the trustee of the bankrupt be directed to surrender to it four pianos, which had been turned over to the trustee by the bankrupt upon his adjudication. The question turns upon the point whether the contract under which the Piano Company delivered the pianos in question to the bankrupt was a consignment contract or a contract of conditional sale. The referee held that on the face of the papers the contract in question was a contract of conditional sale, and that inasmuch as same had not been recorded, as provided by the laws of Georgia, the rights of the trustee in the pianos were superior to the rights of the Piano Company.

[1] 1. It is often quite difficult to determine whether a contract is one of agency or consignment, or whether it is one of conditional sale. In order to determine this question, it is always necessary to consider all the terms of the contract, so as to ascertain the intention of the parties. If it is intended and provided that the customer should be absolutely bound in all events to pay for the goods, the title being reserved in the vendor, then the contract is one of conditional sale. However, if the vendor merely delivers the goods to the customer for sale by him as the agent of the vendor, the customer not being absolutely bound by the contract to pay for the goods, then the contract is one of consignment for sale or an agency to sell; it is a mere bailment. 35 Cyc. 661. "The fact that such a contract provides that the receiver of the goods may fix the selling price and may retain the difference between this price and the price at which the goods are billed to him as his commission, and shall also pay insurance, storage, freight and other expenses, does not make the contract an agreement of sale." In re Columbus Buggy Co. (C. C. A. 8th Cir.) 143 Fed. 859, and cases cited on page 861, 74 C. C. A. 611; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Ludvigh, Trustee, v. American Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345; National Bank v. Goodyear, 90 Ga. 711, 16 S. E. 962; In re Flanders, 134 Fed. 560, 67 C. C. A. 484.

[2] 2. Counsel for the trustee recognize the general doctrine above enunciated, but contend especially that under the concluding sentence in the third paragraph of the contract which is set out in full above, the contract is not one of bailment, but one of sale. This sentence is, as follows:

"If any piano is unsold six months from date of shipment, I [that is, A. A. Thomas, the bankrupt] agree to pay for same at your option."

It is conceded that more than six months had elapsed before the adjudication was had. Counsel for the trustee contend that under this clause in the contract the Piano Company had the right at its option to compel the bankrupt to take and pay for the pianos at the expiration of six months from date of shipment, and that this provision made the contract one of sale instead of consignment. They also contend that such clause is a fraud on the creditors, giving the Piano Company a secret power to call the contract one of sale or one of consignment to meet the exigencies of the situation. The highest courts of this state have never decided this exact point. They have, however, recognized and enforced the distinction between consignment contracts and contracts of conditional sale, and have held that it is not necessary under the laws of Georgia for a consignment contract to be recorded. Furst v. Commercial Bank, 117 Ga. 474, 43 S. E. 728; Powell v. Brunner, 86 Ga. 532, 12 S. E. 744; Federal Rubber Co. v. King, 12 Ga. App. 261, 76 S. E. 1083; National Bank v. Goodyear (supra), 90 Ga. 711, 16 S. E. 962.

The Supreme Court of Georgia has held also that the converse of the proposition contained in the clause now under consideration, so as to give the consignee an option of purchase, is not inconsistent with a bailment or consignment until such option is actually exercised. Evans v. Napier, 111 Ga. 102, 36 S. E. 426; Wiggins v. Tumlin, 96 Ga. 753, 23 S. E. 75; Furst v. Commercial Bank, supra, 117 Ga. 474, 43 S. E. 728. Other courts elsewhere have also construed consignment contracts which contain a clause giving the consignee an option to buy the consigned goods, and have likewise held that this clause, before the option is exercised, does not divest the contract of its nature as a bailment or consignment, or convert it into a contract of sale. 35 Cyc. 655, and cases cited in note 60; In re Pierce (C. C. A. 8th Cir.) 157 Fed. 757, 85 C. C. A. 14.

We see no reason in law or equity why the rule should not work both ways. The question depends upon what the parties bind themselves to do under the terms of the contract in accordance with its original terms, and where one of the parties has to take some affirmative action, so as to change the effect and operation of the contract as it originally stood, we do not see how in the absence of such affirmative action the nature of the contract is changed. As stated by Judge Powell in the case of McKenzie v. Roper Wholesale Grocery Co., 9 Ga. App. 185, 70 S. E. 981:

"If the effect of the contract is that the property is delivered from the bailor to the bailee, with the understanding that the title is to remain in the bailor and the bailee does not assume initial responsibility to pay the purchase price, it is ordinarily not a conditional sale, but is a consignment, although the bailee may have the option of purchasing the goods themselves by paying a stipulated price, or may have a right to sell them to other persons upon accounting to the bailor for a stipulated sum, and though the bailee's compensation in the matter may depend upon such profit as he shall realize on the difference between the price at which the goods are consigned and the price at which they are sold, and though the bailee may be responsible to the bailor for the

value of such goods as he may sell on credit, whether he collects from the purchasers or not."

The Court of Appeals of Georgia in the case of Federal Rubber Co. v. King, 12 Ga. App. 261, 76 S. E. 1083, after quoting the above extract from Judge Powell's opinion in the McKenzie Case, adds:

"The whole question is whether the ostensible purchaser assumes liability for the purchase price at the time the goods are received. * * * "

Applying this rule to the case at bar, the question is, Whether the bankrupt assumed liability for the purchase price of the pianos at the time he received same. It is clear from reading the contract that the bankrupt did not assume this liability, but he was only to become liable for the pianos in the event the Piano Company at the end of six months exercised the option to require him to pay for same. This contingency never arose in this case, and therefore the pianos remained on consignment with the bankrupt at the time of his adjudication, and the trustee took them in the same plight.

As stated above, we see no reason why the rule should not work both ways. The highest courts of this state, in the decisions above cited, have held that the consignment nature of the contract is not changed because the consignee had an option to purchase the goods. Indeed, in bankruptcy matters, fraud on the part of the bankrupt is generally sought to be provided against, instead of fraud on the part of the person who owns the goods and has left them with the bankrupt. If the right of the bankrupt to exercise the option to buy the goods does not, under the decisions cited above, change the nature of the contract from one of bailment to one of sale, we see no good reason why a similar effect should not be given to a contract where this option is lodged with the owner of the property. It is in the interest of justice that a person should not be deprived of his property without his consent. This view of the law is sustained by other courts which have passed on the precise question here made, and those courts have held that such an option on the part of the consignor does not, before the option is exercised, convert the contract into one of sale. In re Galt (C. C. A. 7th Cir.) 120 Fed. 64, 56 C. C. A. 470; In re Reynolds (D. C.) 203 Fed. 162, and cases cited; Martin v. Stratton-. White Co., 1 Ind. T. 394, 37 S. W. 833; Weir Plow Co. v. Porter, 82 Mo. 23; Lenz v. Harrison, 148 Ill. 598, 36 N. E. 567; Franklin v. Stoughton Wagon Co. (C. C. A. 8th Cir.) 168 Fed. 857, 94 C. C. A. 269.

In the Galt Case, cited above, the Circuit Court of Appeals thought that it was especially significant that the option to require payment was given to the consignor and not to the consignee, and gave that as one of its reasons for holding that the contract was one of bailment and not of sale. The language used by the court in that case was as follows:

"It was not contemplated that Galt should ever own these wagons. He was to sell them to others for the company; his commissions to be the amount which he might receive over the prices stated in the contract. The proceeds, whether in cash or in notes of the purchasers, were to be immediately returned to the company; the notes being guaranteed by Galt. This was a del credere commission, and not a sale. The company could compel a return of the goods not sold. Galt had not the option to pay for them in

money. Even with respect to the goods unsold within the 12 months, the option for their return or payment was with the company, and not with Galt; and nowhere in the agreement does the latter covenant to pay for these goods as in the case of a sale."

This case was quoted approvingly by the Circuit Court of Appeals of the Eighth Circuit in the case of John Deere Plow Co. v. M'David, 137 Fed. 802, and at middle of page 811, 70 C. C. A. 422. The Circuit Court of Appeals in the Galt Case stated that while the clause giving to the consignor the option to require the consignee to pay for the goods which were unsold at the expiration of a certain period might, if considered alone, tend to indicate a sale, yet, taking that clause with the entire contract, it was seemingly incorporated only so as to compel the agent promptly to sell and to report sales within the time stated.

[3] We do not think that this provision in the contract under consideration was any fraud on the creditors. The laws of Georgia, like the laws of other states, do not require consignment or bailment contracts to be recorded. Such contracts are upheld by the courts, although the consignee is clothed with all the indicia of apparent ownership, and although there is nothing on record to put creditors on notice as to the true ownership of the consigned goods. Such is the general policy of the law on the subject. Therefore, on reason and authority, we do not think that the clause in question should have the effect contended for.

3. The law requiring contracts of conditional sale to be recorded is to be found in section 3318 in the Georgia Code of 1910, which is in the following language:

"Whenever personal property is sold and delivered with the condition affixed in the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale in order for the reservation of title to be valid as against third parties, shall be evidenced in writing and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves, the contract as made by them shall be valid and may be enforced, whether evidenced in writing or not."

The contract in question was not of the nature described in the section of the Georgia Code above quoted. Therefore it was not necessary for same to be recorded, as required by that section. Nor is there any other law in Georgia requiring contracts of the nature of the one under consideration to be recorded. Therefore the failure to record the contract in question did not deprive the Chase-Hackley Piano Company of its right to recover the pianos from the trustee.

[4] 4. It is apparent, from reading the entire contract between the parties, that same was intended to be a consignment contract. It is called a consignment throughout; the pianos were to be sold on such terms as the consignor might direct; all money, notes, or other property received in the sale of any piano should belong to the consignor; for all sales on time, notes or leases should be taken on blanks furnished by the consignor and payable to its order and subject to its approval, and consignee was to indorse such notes; the commission was to be paid by the consignor to the consignee; all pianos taken back

from customers or taken in exchange were to be regarded the same as goods consigned and to be accounted for in the same manner; the consignee was to send the Piano Company a statement on the 1st day of each month of all instruments received and sold and remaining on hand unsold and make prompt returns as sales were made; all pianos were to be returned to consignor on demand; and in conclusion it was agreed that the contract might be terminated at any time by either party, and that thereupon the pianos on hand should be subject to the order of the Piano Company. Considering the contract in its entirety, it is clear that the contract was one of consignment or bailment, and not a contract of conditional sale, and that the clause depended upon by counsel for the trustee to change the nature of the contract into one of sale was not effectual for such purpose. In this connection attention may be called to the opinion of the Supreme Court of the United States recently delivered in the case of J. F. Bailey, Trustee, v. Baker Ice Machine Company, 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. ——, in which the failure of the vendor of certain machinery to exercise an option given in the contract was adverted to in the following language:

"Coming to the provision relating to a mechanic's lien, we think it did no more than reserve to the vendor a privilege or option to file and enforce such a lien. It well may be that the exercise of this privilege would have been inconsistent with a continued assertion of title by the vendor. William W. Bierce v. Hutchins, 205 U. S. 346, 27 Sup. Ct. 524, 51 L. Ed. 833. But the privilege was not exercised, and it hardly can be said that its mere reservation nullified the express words of the stipulation concerning the title. That it was not intended to do so seems manifest when the entire contract is considered."

[5] 5. Furthermore, it is stated in the intervention which the Piano Company filed with the referee that:

"During the entire period of business between the parties under said contract, both parties to the contract always treated the goods as consigned goods, and they were dealt with as such."

This course of conduct on the part of the parties to the contract, and the construction so put by them on same, is entitled to some consideration. The Circuit Court of Appeals of the Eighth Circuit in the case of Metropolitan National Bank v. Benedict Co., 74 Fed. 182, discussed this phase of the subject in the opinion at middle of page 185, 20 C. C. A. 377, at page 379, in the following language:

"Moreover, parties have the undoubted right to make their own contracts, and to put their own construction upon them, and to regulate their rights and liabilities thereunder. If the court 'leaves the parties to be governed by their understanding of their own language, it in effect enforces the contract as actually made. That they should be permitted to construe their own agreement accords with every principle of reason and justice.'"

6. Counsel for the trustee rely somewhat upon In re Roellich, 223 Fed. 687, in which the District Court of Oregon, in considering a contract similar to the one here involved, held that same was not a consignment contract, but was a contract of conditional sale. The court there says that where property is delivered to the vendee for sale in the usual course of business as a merchant, and the various provisions relating to the ownership and possession are mere contrivances to se-

cure the purchase price to the vendor, the transactions are fraudulent in law as against other creditors of the vendee, and it bases that decision upon another case decided by the same District Court of Oregon (In re Rasmussen's Estate, reported in 136 Fed. 704), in which it was held that, under the laws of Oregon, a conditional sale or a bailment of goods made by one person to another for the purpose of sale is inconsistent with ownership on the part of the vendor or consignor on account of the fact that the goods are to be resold. Those decisions, therefore, are based on the general policy of the law in the state of Oregon. This policy does not prevail in Georgia, because in this state it is lawful to deliver goods on conditional sale or on consignment for the purpose of resale by the vendee or consignee. Such transactions are also upheld by the decisions of the Supreme Court of the United States which are cited above.

An order will be taken, therefore, sustaining the petition for review filed by petitioner, and setting aside the order of the referee in the matter, and directing that the referee take further proceedings in the matter in accordance with this opinion.