## 74758. BUFFINGTON v. SASSER.

### (363 SE2d 2)

BANKE, Presiding Judge.

Prior to 1972, appellant Robert Buffington and appellee Robert Sasser owned and operated separate mechanical subcontracting businesses known, respectively, as Dresco Mechanical Contractors, Inc., and Sasser and Company. The complicated factual scenario giving rise to this litigation had its genesis in 1972, when Buffington and Sasser entered into a joint venture which they incorporated as Dresco Corporation. Buffington served as the new company's president and Sasser as its vice-president and chief operating officer. Dresco Corporation took over no business already undertaken by its principals' existing companies, which continued in operation as before.

Dresco Corporation undertook several projects, among them a subcontract to perform certain mechanical work in connection with a construction project at Central State Hospital in Milledgeville, Georgia (hereafter referred to as the "Milledgeville project"). However, shortly after beginning work on this project, the parties decided to terminate their joint venture; and in October of 1972 they entered into a written agreement to that effect. Pursuant to this agreement, the remaining work which the joint venture had undertaken to perform was divided between Buffington and his corporation on the one hand and Sasser and his corporation on the other, with the Milledgeville project being assigned to Buffington and his company, Dresco Mechanical Contractors, Inc. Each party agreed to indemnify the other for any liability arising out of the completion of the various projects assigned to them. Buffington's agreement to indemnify Sasser (which was to become the subject of the present litigation) specifically provided as follows: "Buffington and Dresco Mechanical agree to indemnify and save harmless Sasser & Company, Inc., Sasser and Dresco Corp. from any and all liabilities and responsibility for or arising out of the subcontracts, purchase orders and projects herein assigned to Dresco Mechanical, whether such liability and responsibility exists now or arises in the future, and do further agree to indemnify and save harmless Sasser & Company, Inc., Sasser and Dresco Corp. from any and all liability and responsibility for or arising out of: (a) any performance or payment bonds issued in connection with . . . construction of . . . [the Milledgeville project]."

In 1976, Buffington and Dresco Mechanical Contractors, Inc., (hereafter sometimes referred to together as "Buffington") were named along with Sasser, Sasser and Company, Inc., and Dresco Corporation (hereafter sometimes collectively referred to as "Sasser") as third-party defendants in a federal court lawsuit stemming from the Milledgeville project. In that litigation, Sasser filed a cross claim against Buffington, asserting that the termination agreement required

Buffington to indemnify him against any liability with which he might be charged in the suit. The federal court granted summary judgment to Sasser on this cross-claim, concluding that "the assignees [i.e., Buffington] must stand ready to indemnify the movants against any loss suffered in the litigation." Both parties were, however, subsequently dismissed without prejudice from the federal litigation.

During the course of the federal litigation, Sasser was represented by the law firm of Stokes and Shapiro. Buffington initially had other counsel; however, it appears that at some point during the proceedings the firm of Stokes and Shapiro also began representing Buffington, pursuant to the parties' express consent to such dual representation. Also, it appears that Buffington settled an unrelated claim against an unrelated party during the pendency of the federal litigation, resulting in his placement of $34,781.97 in escrow with Stokes and Shapiro, "to be applied against any judgment, settlement or agreement of settlement between [Buffington] and Sasser and Sasser & Company."

After Buffington and Sasser had been dismissed from the federal litigation without an adjudication of liability, Sasser demanded that Buffington reimburse him for his legal expenses incurred in defending the federal suit. When Buffington refused, Sasser filed the present suit in the Superior Court of Fulton County to recover such attorney fees from the money being held in the escrow account, naming both Buffington and Stokes and Shapiro as defendants. Stokes and Shapiro responded by filing a counterclaim against Sasser as well as a cross-claim against Buffington in the nature of an interpleader, in an effort to determine its responsibilities regarding disbursement of the escrow funds.

Buffington moved to transfer the case to the Superior Court of Forsyth County, contending that venue was not proper in Fulton County. The trial court denied the motion, and we denied a subsequent application by Buffington for interlocutory appeal review of that ruling. The trial court later ruled in favor of Sasser on the merits of the case by granting his motion for summary judgment and denying a motion of summary judgment filed by Buffington. This appeal followed. *Held*:

1. The motion to transfer the proceedings based on improper venue was correctly denied. Although the only named defendant residing in Fulton County was the law firm of Stokes & Shapiro, which was sued solely as a stakeholder, the plaintiff, Sasser, was also a resident of Fulton County. In *Williams v. Overstreet*, 230 Ga. 112 (195 SE2d 906) (1973), the Supreme Court held that an action of this sort is properly brought in the county in which the stakeholder is subject to suit, where the stakeholder's response is in the nature of an interpleader and where one of the claimants to the fund is also a resident

of that county, even if the other claimants reside in different counties. More recently, in *Kelly v. C & S Nat. Bank,* 160 Ga. App. 405 (1) (287 SE2d 343) (1981), this court held that venue in an action where there is a counterclaim, cross-claim or third-party claim for interpleader is proper in any county where at least one of the claimants to the fund resides.

Buffington's reliance on *Currahee Constr. Co. v. Rabun County School Dist.,* 180 Ga. App. 471 (349 SE2d 487) (1986), for a contrary result is misplaced. In *Currahee,* the plaintiff sued a construction company and its "builder's risk" insurance carrier in Rabun County, the situs of the insured property, and sought to bring in the nonresident construction company as a joint obligor under the authority of OCGA § 9-10-31 and Art. VI, Sec. II, Par. IV of the Georgia Constitution. We held that the defendants were not jointly obligated and that the construction company consequently could not be sued in Rabun County because the alleged injuries and causes of action were different, the cause of action against the insurance carrier being in contract and the cause of action against the construction company being in tort. That case has no application to the present case, where venue is based not on joint liability but on the separate legal principles applicable to interpleader actions. Applying the rationale of *Williams,* supra, and *Kelly,* supra, we hold that the motion to transfer was properly denied.

2. Buffington contends that the enforceability of any obligation to indemnify Sasser which he may have acquired as a result of the termination agreement was contingent upon the entry of a judgment against Sasser in favor of a third party and that, because no such judgment or settlement was ever obtained against Sasser in the federal action, he (Buffington) is consequently entitled to summary judgment in the present action. This claim is without merit. OCGA § 51-12-32 (c) provides that, "[w]ithout the necessity of being charged by an action or judgment, the right of indemnity, express or implied, from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim. . . ." Accord *Independent Mfg. Co. v. Automotive Prods.,* 141 Ga. App. 518 (1) (233 SE2d 874) (1977) (permitting a cause of action for indemnity to be maintained prior to judgment); *Robert & Co. Assoc. v. Pinkerton & Laws Co.,* 120 Ga. App. 29, 33 (169 SE2d 360) (1969) (holding that a judgment fixing liability is not an absolute condition precedent to the enforcement of a contract of indemnity). Based on these authorities, we hold that the trial court was correct in ruling that it was not necessary that a prior judgment have been entered against Sasser as a condition precedent to his right to enforce Buffington's indemnity obligations under the termination agreement. It follows that Buffing-

ton's motion for summary judgment on this basis was properly denied.

3. Buffington asserts, on three separate grounds, that the trial court erred in granting Sasser's motion for summary judgment. Initially, he submits that there exists a factual dispute as to whether the termination agreement ever became enforceable, due to Sasser's nonperformance of an alleged obligation under that agreement to effect the transfer of the Milledgeville project subcontract from Dresco Corporation to Buffington and Dresco Mechanical Contractors, Inc. This interpretation of the agreement is, however, contradicted by its clear and unambiguous language, which obligated Buffington, rather than Sasser, to use his best efforts to effect such an assignment of the Milledgeville project subcontract. We find no evidence of any nonperformance on Sasser's part which would excuse Buffington from the performance of his contractual obligations under the termination agreement.

Buffington secondly asserts the defenses of payment, release, novation, and accord and satisfaction, based on certain language appearing in a settlement agreement executed by the parties to the federal litigation, specifying that any right of recovery Sasser and Buffington might have against each other was to be contingent upon a recovery by the plaintiff in that action. However, that settlement agreement, which has been made a part of the record in the present action, also contains a reservation of rights clause specifying that any existing right of recovery Sasser might have against Buffington was not to be diminished as a result of the agreement.

"There is no better settled rule as to the construction of contracts than that where the construction of any part is involved in doubt, an understanding of its meaning is to be sought in the light afforded by the meaning of all the other parts of the instrument. Even if one part of the contract is somewhat repugnant to the remaining portions, the true meaning of the contract as a whole is to be ascertained and enforced." *Federal Rubber Co. v. King,* 12 Ga. App. 261, 263 (76 SE 1083) (1912). See also OCGA § 13-2-2 (4). Construing the two contractual provisions in question as being harmonious rather than repugnant, it is clear that the provision making Sasser's future right of recovery against Buffington contingent upon a recovery by the plaintiff in the federal litigation applied only to such future claims as Sasser might have against Buffington as the result of the outcome of that action, whereas the reservation of rights provision applied to any existing right of recovery Sasser already had against Buffington at the time the agreement was signed. The claim asserted by Sasser in the present litigation for indemnification of the costs incurred in defending the federal lawsuit obviously was already existing and liquidated at the time the settlement agreement in the federal

action was executed, and it was in no way dependent on the validity or future enforceability of any claim asserted by the plaintiff in that action. It follows that the claim asserted by Sasser in the present case was not extinguished or diminished by the settlement agreement.

Finally, Buffington contends that the indemnity clause contained in the termination agreement contravenes public policy and is unenforceable. In this regard, he relies on OCGA § 13-8-2 (b), which specifies that a provision in a construction contract purporting to indemnify the promisee against damages resulting solely from his own negligence is against public policy. However, the indemnity clause at issue here purports merely to "indemnify and save harmless [Sasser] from any and all liabilities and responsibility arising out of the subcontracts. . . ." It does not expressly apply to damage caused by Sasser's own negligence, nor is such indemnification sought in the present action.

We must seek to construe the contract so as to uphold it in its totality. See OCGA § 13-2-2 (4). "It is not to be presumed that people intend to violate the law, and the language of their undertakings must, if possible, be so construed as to make the obligation one which the law would recognize as valid." *Equitable Loan &c. Co. v. Waring*, 117 Ga. 599 (16) (44 SE 320) (1903). Accord *Hartline-Thomas, Inc. v. Pew Constr. Co.*, 151 Ga. App. 598 (260 SE2d 744) (1979). We thus hold that the trial court acted properly in rejecting Buffington's public policy attack on the enforceability of the indemnification provision. Having rejected each of the three grounds asserted by Buffington for the reversal of the summary judgment, we accordingly affirm the judgment of the trial court in its entirety.

*Judgment affirmed. Carley, J., concurs. Benham, J., concurs in judgment only as to Division 3 and fully concurs as to Divisions 1 and 2.*

DECIDED SEPTEMBER 22, 1987 —
REHEARING DENIED NOVEMBER 6, 1987 —

*Glenville Haldi*, for appellant.
*Thomas J. Wingfield III, Herman L. Fussell, John P. Gallagher*, for appellee.