### 28831. OVERTON-GREEN DRIVE-IT-YOURSELF SYSTEM INC. *v.* COOK *et al.*

DECIDED JULY 11, 1941.

*Lee, Congdon & Fulcher,* for plaintiff in error.
*C. Wesley Killebrew,* contra.

BROYLES, C. J. In behalf of herself and her two minor children, Mrs. Rosa Lee Cook instituted a proceeding before the Industrial Board against Overton-Green Drive-It-Yourself System Inc. (hereinafter referred to as "Overton-Green") to recover compensation for the homicide of Andrew Eugene Cook, the husband and father

respectively of Mrs. Cook and said children. The director awarded Mrs. Cook, for the benefit of herself and her two children, compensation at the rate of $1.55 per week for a period of three hundred weeks from and including December 26, 1939, the date of the accident, and 45½ cents a week for the same period of time as a penalty for non-compliance with the requirement of Code, § 114-602, that an employer operating under the workmen's compensation act shall fully insure his liability thereunder. The director also ordered the employer to pay $200 as a reasonable attorney's fee to claimant's counsel, and to pay any reasonable medical and hospital expenses, and burial expenses not exceeding $100. The Industrial Board affirmed the award; the judge of the superior court affirmed the finding of the Industrial Board; and Overton-Green excepted to the court's judgment.

Counsel for the plaintiff in error contend that "the deceased . . was an employee of the Safety Cab Company . . , and that while that organization was owned and controlled by Overton-Green . . , it was an entirely separate and distinct business, and that Overton-Green did not have ten or more employees engaged in this separate and distinct business of Safety Cab Company, and that, therefore, the workmen's compensation law does not apply, and the Industrial Board has no jurisdiction in the premises." Counsel further contend that their client was not liable for penalties or attorney's fees. The attorneys for plaintiff in error admitted that Overton-Green owned Safety Cab Company, but insisted that Safety Cab Company was merely a trade-name under which Overton-Green conducted a taxicab business that was entirely separate and distinct from the business operated by Overton-Green; admitted that deceased was an employee of Safety Cab Company, but denied that he was an employee of Overton-Green; admitted that said minors were born, respectively, June 16, 1931, and February 3, 1937, and were the issue of a lawful marriage between Rosa Lee Cook and deceased; and admitted that the accident arose out of and in the course of the deceased's employment.

The evidence discloses the following facts: Overton-Green was a corporation operating a taxicab business in the City of Augusta, Georgia. Safety Cab Company was not incorporated, and was the trade-name under which Herbert Ulmer formerly operated a similar business in said city. Ulmer went into bankruptcy and his

business was sold to Fred Melton, an employee of Overton-Green, who, in January, 1939, sold Safety Cab Company to Overton-Green in consideration of the settlement of a debt that he owed that corporation. At the time of the accident deceased was driving a Safety cab, and was earning $10.71 per week. After Overton-Green purchased Safety Cab Company, it continued to operate the cabs formerly operated by it with the sign "Taxi, 'Phone 326" painted on their sides; and operated the Safety cabs with "Safety Cab, 'Phone 2686" painted on their sides. On December 26, 1939, four Overton-Green cabs and three Safety cabs were being operated. There was a night and day shift for all cabs, and, consequently, eight drivers of Overton-Green cabs, and six drivers of Safety cabs. There were also two telephone operators, one working during the day, and one at night, and, while Overton-Green and Safety Cab Company had separate telephones and telephone numbers, these operators had a "desk-chair switchboard" and answered calls for both Overton-Green and Safety Cab Company. These operators and the president of Overton-Green each had the right to hire, discharge, and direct the drivers for the Safety Cab Company. The drivers of the Safety cabs were at times given written notice transfering them to the Overton-Green cabs. Safety cabs were returned for taxes by Overton-Green, and all the cabs operated as Safety cabs and all the Overton-Green cabs were insured in a policy issued to Overton-Green. The president of Overton-Green operated a garage at which both the Overton-Green and the Safety cabs were washed and repaired. F. H. Gustafson testified that he was employed by Overton-Green and drove a Safety cab at first, but that Fred Melton, who was in charge of all the cabs of Overton-Green and Safety Cab Company, transferred him to an Overton-Green cab. Mr. Green, president of Overton-Green, testified that he owned the majority of the stock of that corporation; and the attorney for Overton-Green admitted that "neither the Safety Cab Company nor Overton-Green has filed any policy of insurance or otherwise qualified with the State Industrial Board, or filed any reports to the Commission."

In view of the rule that the finding of the Industrial Board as to the facts can not be reversed if there is any evidence to support it, we have not undertaken to set out all of the evidence or the conflicts therein. In making his award the director said: "In

the instant case we are not dealing with two separate corporations, which of course are separate entities, although the sole stockholder in the corporation might be one and the same individual. Here we have a corporation which acquires a separate business, with exclusive control over the manner, method and means of operating the business and over the employees performing the work; and, of necessity, the corporation acquired the profits or losses incident to the operation of the business. The corporation having control of the business, and having hired and controlled the employees driving Safety cabs, the corporation was the employer of these employees." In support of his views the director cited *City Council of Augusta* v. *Butler,* 50 *Ga. App.* 838 (179 S. E. 149), and *Small* v. *NuGrape Company of America,* 46 *Ga. App.* 306 (167 S. E. 607). Reference to the latter case will disclose that it is especially applicable to the instant case. The director was also of the opinion that the evidence warranted the conclusion that "the manner in which this taxicab business was operated was a mere subterfuge to evade the workmen's compensation act;" that Overton-Green had regularly in its employ at the time of the accident ten or more employees; and that, although coming within the provisions of the act, the employer wilfully failed and refused to comply with the act by carrying proper insurance coverage. We can not say that the director's findings of fact and his conclusions of law based thereon are not supported by the evidence. The attorneys for the employer admit that their client did not comply with the provisions of the workmen's compensation act, and the third division of the syllabus in *Jones* v. *Cochran,* 46 *Ga. App.* 360 (167 S. E. 751), reads as follows: "An employer who has 'regularly in service' ten employees or more, and who has not given notice of his election to reject the provisions of the compensation act, as provided in section 4 of the act, is taken to have accepted the provisions of the act, and if such employer 'refuses,' as provided in section 67 of the act, to comply with the provisions of section 66 of the act relative to insuring his 'liability' under the act, or to furnish to the commission satisfactory proof of his ability to pay compensation, the commission may assess against the employer a penalty of ten per cent. upon the amount of compensation awarded. Where the commission in awarding compensation had assessed as the penalty an additional sum equal to ten per cent. of the com-

pensation awarded, the award was not error because the commission did not find that the employer had 'wilfully' neglected to comply with the provisions of the act; and where the employer had failed to comply with the provisions of section 66 of the act, such failure amounted to a refusal of the employer to so comply, and the award was not illegal upon the ground that it appeared that the employer did not 'refuse' to comply with the provisions of the act." In *Elliott Addressing Machine Co.* v. *Howard,* 59 *Ga. App.* 62 (2) (200 S. E. 340), this court said: "The Department of Industrial Relations was authorized under the evidence to find that the defendant, in failing to take insurance covering its employees as required by the compensation act, had refused or wilfully neglected to comply with the provisions of section 66 of the act (Code, § 114-602), which requires employers operating under the compensation act to procure insurance as therein required. The department was authorized, in addition to the compensation awarded, to assess damages in an amount not greater than ten per cent., and to fix reasonable attorney's fees to be paid by the employer."

In support of their contention that Overton-Green and Safety Cab Company were not parts of the same business within the meaning of section 15 of the workmen's compensation act, counsel for the plaintiff in error cite *Carswell* v. *Woodward Brothers,* 38 *Ga. App.* 152 (142 S. E. 907). In that case this court made the following statement and ruling: "It appeared from the evidence that Woodward Brothers were a partnership, and, as such, owned and operated a store, a cotton-gin, a planing mill and certain sawmills, which they rented to other people, who in turn used them to saw lumber for the respondents at so much per thousand feet. The gin and the planing mill were situated near to each other and were operated with power from a common engine and boiler. However, for some reason having reference to the adequacy of the machinery, they were never operated at the same time. The planing mill was always shut down during the main portion of the ginning season. Ten or more employees were regularly employed at the planing mill when it was in operation, but never as many as ten were employed at the gin. The ginning season lasted for about three months of each year. Accounts in connection with both the gin and the planing mill were kept by one of the partners on their books at the store. The decedent was not employed to perform

any service at the planing mill, and performed none, and was working at the gin at the time of the injury which caused his death. At the beginning of the ginning season, when the planing mill would be closed, all employees except such as were needed to operate the gin were discharged until needed again at the planing mill. There were no other facts tending to connect the two enterprises as parts of the same business. Under the evidence the gin and the planing mill were not parts of the same business, although they were operated by power from a common source and were owned and controlled by the same persons." The facts of that case clearly distinguish it from this case, and we do not think that the above-quoted ruling should be extended to cover the facts of the instant case. The other authorities cited in behalf of the plaintiff in error are not in conflict with our present ruling.

The contention of the plaintiff in error that the allowance of $200 as an attorney's fee was illegal, because no evidence was introduced to show what the services of the attorney for the claimant were worth, is untenable, since under the Code, § 114-603, the Industrial Board in a suit like the present one, is not only authorized, but is required, to "fix a reasonable attorney's fee for the representative of the employee to be paid by the employer in addition to the increased compensation;" and the board can do this in the absence of any specific evidence as to the value of the services of said representative. The only case cited in support of such contention is *Fry* v. *Lofton,* 45 *Ga.* 171. That was not a compensation case, and is not here applicable. However, generally, as said in 7 C. J. S. 1093, § 191, "The determination of a reasonable attorney's fee for services rendered, in case of a controversy in regard thereto, is largely within the discretionary power of the court; and it may be fixed either with or without the aid of expert testimony as to value."

The judge of the superior court did not err in affirming the award of the Industrial Board.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*