## 75912. AARON et al. v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
### (366 SE2d 355)

BANKE, Presiding Judge.

This is an appeal from a judgment entered on a jury verdict in favor of the plaintiff/appellee, Georgia Farm Bureau Mutual Insurance Company ("Farm Bureau"), in a declaratory judgment action brought to determine its obligation to defend a personal injury action.

George Mullins and his wife brought suit against Richard Aaron (now deceased) to recover for certain injuries Mullins had allegedly sustained as a result of an aggravated assault committed by Aaron.[1] Aaron called upon Farm Bureau to defend the suit, claiming coverage under his homeowner's liability insurance policy as well as under a farm owner's liability policy which insured the premises where the incident is alleged to have occurred. Thereafter, Farm Bureau brought the present declaratory judgment action seeking a determination that it had no obligation in the matter, based on certain policy language excluding coverage for bodily injury or property damage "expected or intended by the insured" or "caused intentionally by any insured over twelve years old." The declaratory judgment action was tried before a jury, which returned a verdict in favor of Farm

---

[1] Aaron was tried and convicted of aggravated assault as a result of the incident, but his conviction was later reversed by this court in *Aaron v. State*, 172 Ga. App. 700 (324 SE2d 564) (1984), and he died before a retrial could be held.

Bureau.

Aaron had died prior to this trial, but his version of events was introduced by Farm Bureau in the form of a transcript of his testimony from the criminal proceeding, even though that testimony was, in some respects, favorable to the appellants. Aaron had testified that at approximately 5:30 p.m. on the day in question, he drove to the home of Thomas Daughtry, his wife's deceased father, where he observed a Lincoln Continental automobile parked in the driveway with its hood raised. He stated that he saw a man, later identified as Mullins, standing in front of the vehicle, as well as another individual, later identified as Eddie Phillips, holding a quart of beer and "relieving himself" on the Daughtry property. Aaron maintained that he had never seen either man before and that he consequently became fearful for his safety and that of his wife, who was alone in the house at the time. He said that he got out of his car and asked Phillips "what the hell he was doing," whereupon Mullins got into the Lincoln, came out again "with something I thought . . . was [a] knife and start[ed] toward me." Aaron said he retrieved a pistol from his car at this time and began to fire. He stated, "I didn't know I had hit the man. I had no intention of hitting the man. The only thing I wanted him to do was leave there. . . ." Aaron testified that Mullins then got back into the Lincoln, drove down the road to a neighbor's residence, and stopped, whereupon he (Aaron) realized that something had happened and asked his wife to phone the sheriff.

Aaron's testimony was in conflict with that of a witness named Thomas Mock, who stated that the shooting occurred in front of his mother's home, which was located "up the hill" from the Daughtry property. Mock testified that he had been inside a camper in his mother's yard when he heard gunfire, came outside, and saw Aaron's car and a Lincoln Continental parked near his mother's driveway. He stated that he observed Aaron fire a pistol "at least four times" at a man who was running across the Mock property, following which Aaron got into his car and backed it down the road. Mock testified that he heard Mullins, who was inside the Continental, yelling for help at this time and complaining that he had been shot. When asked in what direction he had observed Aaron fire the pistol, Mock testified, "They looked to me like he was trying to hit him . . . he was shooting wild, I mean he was just shooting." *Held*:

The appellants' sole enumeration of error is directed to the denial of their motion for directed verdict. In a civil case, "[t]he standard of appellate review of the trial court's denial of a motion for a directed verdict is the 'any evidence' standard. [Cit.]" *United Fed. Savings &c. Assn. v. Connell*, 166 Ga. App. 329, 330 (304 SE2d 131) (1983). While Farm Bureau was prevented by OCGA § 24-9-81 from impeaching Aaron, whose unfavorable testimony it had voluntarily of-

fered, it was not bound by his testimony and was consequently at liberty to introduce conflicting evidence, which it did in the form of Mock's testimony. " 'The rule is well established that neither the plaintiff's recovery nor his right to prevail as to a particular issue is defeated because there is a material conflict in the testimony of his witnesses and the version given by some of them does not support his cause or contention. [Cits.]' 'A party introducing a witness is not bound by his testimony and is not estopped from contending before the jury that the truth is otherwise than as testified by the witness.' [Cit.]" *Jem Patents, Inc. v. Frost*, 156 Ga. App. 311, 312 (274 SE2d 707) (1980).

Assuming arguendo that Aaron's own testimony would not have supported the jury's verdict in the present case, Mock's testimony clearly did. "Since there was some evidence supporting appellee's assertions [that the shooting was intentional], disputed issues were created which were properly submitted to the jury. [Cits.]" *United Fed. Savings &c. Assn. v. Connell*, supra at 330.

*Judgment affirmed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED FEBRUARY 9, 1988 —
REHEARING DENIED FEBRUARY 22, 1988 — 

*Charles M. Jones, Griffin B. Bell, Jr., G. Brinson Williams, Jr.,* for appellants.
*Millard B. Shepherd, Jr.,* for appellee.