A89A1277. GEORGIA BUILDING SERVICES, INC. v. PERRY et al.
A89A1278. LANDMARKS GROUP GENERAL CORPORATION v. PERRY et al.
A89A1279. MARYLAND CASUALTY COMPANY v. PERRY et al.
(387 SE2d 898)

SOGNIER, Judge.

William Jack Perry slipped and fell at the 1100 Ashwood Parkway Building in Atlanta. He and his wife brought suit against the owner of the building (Marcasco Company), the major tenant of the

building (Maryland Casualty Company, hereinafter "Maryland"), the property manager (The Landmarks Group General Corporation, hereinafter "Landmarks"), and the building maintenance service (Georgia Buildings Services, Inc., hereinafter "GBS") and its employee (Cecil Carter). The co-defendants filed various cross-claims against each other. The jury found in favor of the Perrys for $165,000 against all co-defendants except Marcasco. (The jury's verdict regarding the claims among the co-defendants will be set forth as needed in the body of the opinion.) Consolidated herein are the appeals by GBS in Case No. A89A1277, by Landmarks in Case No. A89A1278, and by Maryland in Case No. A89A1279.

1. We first address the enumerations regarding the trial court's exclusion of certain evidence. (a) Error in the exclusion of testimony by Ken Hester is enumerated by all appellants. The record reveals when appellees filed their complaint in February 1985, they also served interrogatories requesting all defendants to "[s]tate the name, address, employer and occupation of any person who to your knowledge, information or belief has investigated any aspect of the occurrence which is the subject matter of this litigation on behalf of you or your attorneys, agents, employer or insurance carrier." Although Hester had been employed by Maryland and had investigated William Perry's post-injury work activities, none of the appellants included Hester in their responses to appellees' interrogatory. However, in its January 23, 1987 Notice of Subpoenaing Witnesses for trial, GBS included Hester in its list. The record reflects that GBS's notice was served on appellees' attorney but that GBS made no amendment to its interrogatory answers to supplement the new witness. Nor did appellees take any action pursuant to OCGA § 9-11-37 when the incomplete nature of GBS's response to their interrogatories was revealed by GBS's January 1987 notice. The December 1987 pre-trial order listed Hester as a "may call" witness for both GBS and Maryland and contained appellees' objection to Hester on the basis that he had "never before been identified" to appellees and the information requested by appellees in their interrogatories regarding this witness "has never been provided" to appellees' counsel. None of the parties sought a ruling from the trial court on the objection contained in the pre-trial order. The jury trial commenced on January 4, 1988, and on January 20, 1988, the trial court ruled that appellants could not present Hester's testimony on the basis that Hester "was known to be a witness and was never revealed to the other parties."

We reverse. The record establishes that the existence of Hester as a witness appellants might call was brought to appellees' attention nearly a year before trial. While we agree with appellees that the insertion of Hester's name in the January 1987 notice could not be considered under any set of circumstances as a proper response or ade-

quate supplementation to appellees' interrogatory request, it is likewise clear that once they were made aware of Hester's existence, appellees failed to utilize the statutory procedures available to compel compliance with their discovery or to sanction appellants' improper failure to respond prior to trial. See OCGA § 9-11-37. This case is distinguishable from *Malley Motors v. Davis*, 183 Ga. App. 599, 600 (1) (359 SE2d 394) (1987) and *Allstate Ins. Co. v. Reynolds*, 138 Ga. App. 582, 587 (6) (227 SE2d 77) (1976), cited by appellees, because here the witness was listed in the pre-trial order. Appellees' objection to the inclusion of Hester as a witness in the pre-trial order does not obviate the fact that appellees could no longer claim they were surprised by appellants' decision to call Hester as a witness. Rather, by not invoking a ruling by the trial court, appellees chose not to resolve and avoid the known problems related to Hester's testifying, but instead chose to confront the issue in mid-trial and gamble that the trial court either would sustain their objection during trial, or allow appellees a continuance until the omission was rectified, as suggested by appellants' counsel at trial.

Although the refusal to allow a witness to testify is a matter within the discretion of the trial court, *Reynolds*, supra at 587-588 (6), the record reveals that the exercise of discretion here was based upon a misapprehension of the facts of the case, namely, the trial court's belief that Hester's existence had not been revealed to appellees. Based on that misapprehension, the trial court excluded material testimony which cast doubt both on the amount of damages William Perry sustained and on the credibility of Perry's testimony. Since the record establishes that appellees had been apprised of Hester's existence nearly a year before trial, the compelling reasons for excluding a "surprise" witness are not present here. Compare *Reynolds*, supra. "The object of all legal investigation is the discovery of truth." OCGA § 24-1-2. We find the failure of the trial court to allow the witness to testify constituted an abuse of discretion requiring reversal and a new trial. See generally *Minnick v. Lee*, 174 Ga. App. 182, 184 (329 SE2d 548) (1985).

(b) All appellants contend the trial court erred by granting appellees' motion in limine regarding certain aspects of appellees' tax returns and by precluding their cross-examination of appellees for impeachment purposes based on those tax returns. During discovery it was revealed that William Perry had underreported his income on his state and federal tax returns by failing to include income derived from various side jobs. Citing *Robert & Co. Assoc. v. Tigner*, 180 Ga. App. 836, 843-844 (2) (351 SE2d 82) (1986), the trial court found that any attempt by appellants to offer evidence tending to show that Perry did not report all of his income would unquestionably have an adverse effect on the jury's impression of appellees and of their case

in general, and that the prejudicial effect outweighed the probative value of the evidence, even if admissible. Based on this finding, the trial court ordered appellants not to introduce or attempt to introduce evidence tending to show Perry failed to include all of his income on his tax returns or that his expenses were lower than that actually reported on the returns, on condition that appellees did not attempt to prove that Perry's income was higher than that amount which he actually reported. At trial, Perry testified on cross-examination that his income figures were taken from his tax returns; the record reflects that appellees abided by the trial court's order and made no attempt to prove Perry earned income greater than the amount reported in the tax returns.

The trial court was persuaded by this court's decision in *Robert & Co. Assoc.*, supra, in which we upheld the trial court's exclusion of evidence regarding Tigner's failure to file tax returns, evidence from which Robert & Co. sought to establish that Tigner's claim of having been successfully employed were false (i.e., failure to file tax returns indicating that Tigner had not earned enough to justify filing the returns). The evidence in issue there, as here, raised the inference of criminal wrongdoing, although unlike *Robert & Co. Assoc.*, admission of the evidence in issue in this appeal would have established directly that Perry had earned *more* income, rather than led to speculation that he had earned *less*, as in *Robert & Co. Assoc.*

The cases appellants cite for the admissibility of tax returns are distinguishable from the case sub judice on the basis that the witnesses therein had testified to a certain set of facts and the tax returns were introduced to show that the witnesses had indicated the opposite set of facts to the taxing authorities. In the case at bar and pursuant to court order, Perry restricted his testimony about earnings prior to his fall to those amounts reflected in his tax returns.

" 'Circumstantial evidence, concededly relevant, may nevertheless be excluded by reason of the general principle that the probative usefulness of the evidence is more than counterbalanced by its disadvantageous effects in confusing the issues before the jury, or in creating an undue prejudice in excess of its legitimate probative weight. In either case, its net effect is to divert the jury from a clear study of the exact purport and effect of the evidence, and thus to obscure and suppress the truth rather than to reveal it.' " *Candler v. Byfield*, 160 Ga. 732, 739 (2) (129 SE 57) (1925). "In all cases where the object sought to be proved can be proved without violation of a rule of evidence designed to prohibit prejudice, it should be done so, and the rule not broken unless by necessity, or where the merit of the evidence clearly outweighs its prejudice." *Fred F. French Mgmt. Co. v. Long*, 169 Ga. App. 702, 704 (2) (314 SE2d 666) (1984). In this view of the matter, though the evidence excluded was relevant to the credibility of Perry,

we do not think that the error in its exclusion was sufficiently harmful to appellants as to require a new trial.

(c) Error is enumerated by GBS in the exclusion of a deposition question and the answer by witness David Bailey. Excluded was the question: "And the closest guess you have is that it was lightweight machine oil [on the mat on which William Perry fell]?" and Bailey's response, "I characterized it as lightweight machine oil. . . ." The question and its response were excluded on the basis that it was speculative. Since the question asked the witness for a "guess," i.e., surmise or conjecture, rather than the informed opinion of the witness, we find no error in that ruling. See *Reliford v. Central of Ga. R.*, 140 Ga. App. 782, 783 (3) (232 SE2d 129) (1976).

(d) GBS also enumerates as error the exclusion of evidence regarding its allegation that it was improperly served. Although GBS also contends the trial court erred by denying its motion to dismiss on this matter, it is well established that an enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration. *City of College Park v. Ga. Power*, 188 Ga. App. 223-224 (372 SE2d 493) (1988). Turning to the only issue enumerated, GBS in its brief fails to address any of its arguments or citations of authority to the evidentiary issue, but instead concentrates solely on the trial court's denial of its motion. Thus, we need not consider why evidence of alleged defective service on GBS was not relevant to the issues tried in the case at bar since we deem abandoned the error GBS did enumerate on appeal. See *Lissmore v. Kincade*, 188 Ga. App. 548, 550 (3) (373 SE2d 819) (1988).

2. Errors enumerated in the admission of certain evidence are next addressed. (a) GBS contends the trial court erred by permitting appellees to call witness Charles Tingle for cross-examination and not allowing GBS to cross-examine the witness. As to appellees' cross-examination of Tingle, the transcript reveals that Tingle had investigated William Perry's accident on behalf of GBS's liability carrier and had interviewed appellees, as well as other witnesses, on several occasions; that he went to appellees' house and recorded statements from them; and that he had made an offer of settlement to appellees on behalf of GBS's liability carrier, Sentry Insurance Company. It also appears of record that Tingle had been deposed by appellees three times and on each occasion Tingle had been represented by GBS's attorney, who also served as GBS's trial counsel.

OCGA § 24-9-81 provides "in the trial of all civil cases, either plaintiff or defendant shall be permitted to make the opposite party, or anyone for whose immediate benefit the action is prosecuted or defended, or any agent of said party, or agent of any person for whose immediate benefit such action is prosecuted or defended, or officer or

agent of a corporation when a corporation is such party or for whose benefit such action is prosecuted or defended a witness, with the privilege of subjecting such witness to a thorough and sifting examination . . . ." GBS cites *Mullis v. Chaika*, 118 Ga. App. 11, 15-17 (2) (162 SE2d 448) (1968), in support of its argument that reversible error was committed when the trial court allowed appellees to cross-examine a witness who was not an employee or agent of GBS. We do not agree.

"As applied to the facts of this case, there can be no doubt that the meaning and intent of the legislature in the use of the word 'agent' in this Code section is doubtful so as to require judicial construction of this language. This necessity of construction was recognized in *Garmon v. Cassell*, 78 Ga. App. 730, 739 (52 S.E. 2d 631) [1949], where this court expressly rejected the contention that this language refers only to an agent who was an agent of the party with relation to, or who had some connection with, the particular transaction under investigation." *Atlanta Joint Terminals v. Knight*, 98 Ga. App. 482, 485 (2) (106 SE2d 417) (1958). In that case, this court held that because the witnesses involved were employees of the defendant or of one of the corporate partners of the defendant, they were subject to all of the pressures and possible prejudices in favor of the defendant which that relationship would engender, and upheld the propriety of the cross-examination of these witnesses. See also *Rodgers v. Styles*, 100 Ga. App. 124, 139 (4) (110 SE2d 582) (1959) (error in not allowing defendants to cross-examine school principal in suit between school board and defendants in negligence resulting in school's destruction by fire.) In contrast, the witness cross-examined over objection in *Mullis*, supra, the case cited by GBS, was a former employee of the defendant who was serving in the Army at the time of the trial. Id. at 16. See also *Massey Jr. College v. Taggart*, 140 Ga. App. 591 (231 SE2d 540) (1976).

In this case, while Tingle was not a year round employee of GBS's liability carrier (Sentry), it is uncontroverted that Sentry employed Tingle, an insurance adjuster, to investigate the accident and make settlement offers on its behalf, and that Tingle had worked for Sentry before on other matters. Nothing stated during trial indicated that Tingle was not still employed by Sentry regarding the matter, but even if it could be inferred that Tingle was no longer actively investigating appellee William Perry's accident, it could also be inferred that Tingle, as the president of a company that investigated claims, would be interested in working for Sentry in the future. Thus, unlike the situation in *Mullis*, supra, there was no clearcut end to the employment relationship between Tingle and Sentry, and we find the provisions in OCGA § 24-9-81 broad enough to include Tingle as an "agent" of GBS's liability carrier in the instant case. See *Rodgers*, supra.

Although GBS argues the language in OCGA § 24-9-81 does not include parties in the position held by Sentry, the statute clearly applies to "a corporation . . . for whose benefit such action is . . . defended . . . ." GBS does not controvert that Sentry, as its insurer, would be contractually liable, at least in part, for any judgment rendered against GBS. It follows then that the defense of appellees' action was to the benefit of Sentry, as its contractual liability to GBS was contingent upon the outcome of the case. We therefore cannot agree with GBS that the trial court's action in allowing Tingle to be called for purposes of cross-examination was not within the purview of OCGA § 24-9-81.

Moreover, "whatever the ruling by the lower court, it is incumbent on the complaining party on appeal to show something more than the presumed possibility of prejudice where the issue is that of refusing or allowing cross examination." *Atlanta Americana &c. Corp. v. Sika &c. Corp.*, 117 Ga. App. 707, 711-712 (4) (161 SE2d 342) (1968). Thus, even assuming, arguendo, error on the trial court's part, GBS has failed to demonstrate how allowing appellees to cross-examine Tingle, rather than requiring them to call him as their own witness, prejudiced GBS, precluding a finding by this court of reversible error.

Pursuant to our discussion above as to the relationship between Tingle, Sentry, and GBS, we also find no error in the denial of GBS's request to cross-examine Tingle.

(b) GBS contends the trial court erred by admitting certain testimony by Dr. John E. Brown over its objection that the testimony was speculative. Dr. Brown, a Professor of Economics at Georgia State University, testified as to the basis for his opinion. "If it appears that [an expert witness'] opinion is not based on sheer speculation, an appellate court cannot second guess any methodology utilized to reach the opinion. [Cits.]" *Echols v. Edwards*, 185 Ga. App. 688, 690 (2) (365 SE2d 844) (1988). Since our reading of the transcript indicates Dr. Brown's testimony could not be categorized as "sheer speculation," we find no abuse of the trial court's discretion in admitting this testimony. See id.

3. Errors involving charges given or not given are next addressed. (a) As to the instructions given the jury, we have carefully reviewed the charge, the recharge, and the trial court's answers to all jury questions and find either that no reversible errors were committed by the trial court or that any error committed is unlikely to recur upon retrial of this case. GBS's contention of error regarding the verdict form is not supported by argument or citation of authority pertinent to the issue, and we therefore deem it abandoned pursuant to Rule 15 (c) (2) of the Rules of the Court of Appeals. *Pennsylvania &c. Ins. Co. v. Davis*, 186 Ga. App. 301, 302-303 (3) (367 SE2d 91) (1988).

(b) As to errors asserted in the failure to give certain requests to charge, we find no merit in Maryland's 14th and 15th enumerations, in which it is contended that the trial court erred by failing to charge the jury two of its requests to charge, since a reading of the charge as given reveals that the requested charges were given either verbatim or as close thereto as to make no difference. See generally *Harper v. Samples*, 164 Ga. App. 511, 514-515 (5, 6) (298 SE2d 29) (1982). Nor is there any merit to Maryland's fourth enumeration, contending error in the failure to give certain charges, since Maryland in its brief presents arguments addressing solely a charge that *was* given by the trial court. See *City of College Park*; *Pennsylvania &c. Ins. Co.*, supra.

The trial court charged the jury extensively as to issues involving the attribution of liability for defective premises to the party who actually controls the premises, as opposed to the party who is named on the title instruments. The charges were generally applicable in one degree or another to all the co-defendants involved in this case. Thus, although the trial court did not particularly discuss the tenant-owner relationship between Maryland and Marcasco, we find the jury was accurately and fully charged on the relevant law for the issue covered by the requested charge which is the subject of Maryland's 16th enumeration, and thus no reversible error is presented here. See generally *Brooks v. Coliseum Park Hosp.*, 187 Ga. App. 29, 34 (1) (369 SE2d 319) (1988).

4. Maryland contends the trial court erred by denying its motion for a directed verdict because there was no evidence to support a finding that it owed appellees a duty of care, as Maryland neither owned nor controlled the building premises where Perry fell or, assuming evidence of its control over the premises existed, it had neither actual nor constructive knowledge of the foreign substance on the floormat which caused Perry to fall.

(a) OCGA § 51-3-1 provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." The question whether Maryland was the "owner or occupier" for purposes of liability under OCGA § 51-3-1 "depends on whether or not [Maryland] had 'control of the property, whether or not [it] has title thereto and whether or not [it] has a superior right to possession of property which is in the possession or control of another.' [Cit.]" *Scheer v. Cliatt*, 133 Ga. App. 702, 704 (2) (a) (212 SE2d 29) (1975). The title to the building was introduced into evidence and showed that Marcasco was the title owner of the building. A lease contract adduced at trial reflected that Maryland was a tenant in the building and was

contractually absolved from responsibility under the lease for the up-keep of the common areas in the building, such as the southern entrance to the building where Perry fell. Evidence also established that Perry was entering the building to conduct business at Maryland, and thus was an invitee to the premises, thereby distinguishing *Rhodes v. Perlis*, 83 Ga. App. 312 (63 SE2d 457) (1951).

Maryland presented formidable evidence to support its contention that Marcasco was the owner and the controller of the premises, and the trial court extensively and thoroughly charged the jury as to the legal standard to be met before separate corporate identities could be disregarded. However, appellees presented evidence establishing that Marcasco is a wholly owned subsidiary of Maryland, with no employees of its own at the time of the accident and sharing many of the same officers with Maryland. Maryland occupied most of the space in the building and appellees presented a witness who stated she knew the building as the "Maryland Casualty building." After Perry's accident it was shown that although Maryland's main office was on the third floor of the building and it had only classrooms on the entry level floor, it was Maryland employees who were dispatched to warn people entering the building of the hazardous condition, and a Maryland employee took photographs of the scene of the accident.

"A directed verdict . . . is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict. OCGA § 9-11-50 (a) (b)." *Union Camp Corp. v. Daley*, 188 Ga. App. 756 (1) (374 SE2d 329) (1988). Viewing the evidence in favor of the jury's verdict, we cannot find the evidence, with all its reasonable deductions, demanded a verdict for Maryland on the issue of control of the premises. See generally id.

(b) Maryland contends that even assuming there was some evidence that it rather than Marcasco had actual control over the building, an assumption with which we agree, see Division 4 (a), supra, there was no evidence adduced at trial from which the jury could have found that Maryland had either the actual or the constructive knowledge of the foreign substance upon which Perry fell necessary to hold it liable for appellees' injuries. See generally *Alterman Foods v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327) (1980).

The evidence established that the floormat just inside the exterior doors on the southern entrance of the building had acquired a coating of some slippery substance at some point between the time the building closed on the evening of October 9, 1984 and approximately 10:00 a.m. the following morning when appellees entered the building and William Perry fell. The only evidence adduced by appellees to establish Maryland's actual knowledge of the hazardous southern entrance floormat consisted of the testimony of a Maryland officer

who entered through the *northern* entrance of the building and who noticed something awry with the floormat inside the exterior doors to that entrance, and two witnesses who testified they entered through the southern entrance and noticed something was wrong with the floormat on which Perry later fell. However, the latter two witnesses were employed by an insurance company called VALIC, which is a subsidiary, as is Maryland, of American General Companies.

We cannot agree with appellees that the knowledge of its officer regarding a hazardous condition at the northern entrance of the building constitutes even some evidence of actual knowledge on Maryland's part that a hazardous condition existed at the southern entrance. Nor can we agree with appellees, in the absence of evidence vitiating the separate corporate identities of VALIC, American General Companies, and Maryland, that knowledge on the part of VALIC's employees of the hazardous condition of the southern entrance floormat constitutes actual knowledge of that danger on the part of Maryland. However, "[c]onstructive knowledge may be inferred where there is evidence that an employee of the defendant was in the immediate vicinity and could easily have noticed and removed the substance, *or that the defendant failed to exercise reasonable care in inspecting the premises.* [Cit.]" (Emphasis supplied.) *Hilsman v. Kroger Co.*, 187 Ga. App. 570, 571 (1) (370 SE2d 755) (1988). " 'Liability based on constructive knowledge may also be established by showing that the owner failed to exercise reasonable care in inspecting the premises, but recovery under that approach requires proof of the length of time the dangerous condition was allowed to exist. (Cits.)' [Emphasis deleted.] [Cit.]" *Food Giant v. Cooke*, 186 Ga. App. 253, 254 (366 SE2d 781) (1988). " 'The length of time which must exist to show that the defendant had an opportunity to discover the defect will vary with the circumstances of each case (nature of the business, size of the [building], the number of [invitees], the nature of the dangerous condition, and its location). [Cit.]' [Cit.]" *Colonial Stores v. Turner*, 117 Ga. App. 331, 333 (160 SE2d 672) (1968). Considering the evidence adduced by appellees that the hazardous condition of the southern entrance floormat had been apparent three hours before Perry's fall, having been discovered by the first VALIC employees entering the building for work, we agree with appellees that there was some evidence, however slight, from which the jury could have found that Maryland failed to exercise reasonable care in inspecting the premises. Since "[i]n a civil case, '(t)he standard of appellate review of the trial court's denial of a motion for a directed verdict is the "any evidence" standard, (cit.)' [cit.]," *Aaron v. Ga. &c. Mut. Ins. Co.*, 186 Ga. App. 1, 2 (366 SE2d 355) (1988), the existence of this evidence was sufficient to authorize the trial court's denial of Maryland's motion for a directed verdict. See generally *id.* at 2-3.

5. We find no error in the trial court's denial of Landmarks' motion for a directed verdict. The evidence established that Landmarks managed the entire building and there was evidence indicating that Landmarks' employees opened the doors of the building, including the southern entrance where the hazardous floormat was located. As noted earlier, appellees presented evidence that the hazardous condition of the southern entrance floormat existed some three hours before Perry fell, as demonstrated by the witness who testified she had noticed it when she was one of the first persons to enter that door. "Sonny" Patterson, the Landmarks employee who monitored the mechanical operations in the building and also attended to minor problems not requiring outside assistance, acknowledged when asked that he never made routine inspections of the building (although we note he qualified his testimony when subsequently called by Landmarks by saying that he did look for "abnormal condition[s]," which he primarily characterized as dead light bulbs, when he daily walked through the building). Also introduced into evidence was the service contract between Landmarks and Marcasco, the owner of the building, which provided, in pertinent part, that Landmarks was "[t]o employ and supervise the performance of all full time or part-time on site employees and personnel necessary to perform the maintenance, custodial, security and other services appropriate for the proper operation of the [building.]"

In view of this evidence, the trial court did not err by denying Landmarks' motion for a directed verdict. OCGA § 9-11-50 (a); *Scott v. Hussmann Refrigeration*, 183 Ga. App. 39, 40 (1) (357 SE2d 860) (1987).

6. Turning now to the cross-claims, the record reveals that both Marcasco and Landmarks filed cross-claims against GBS alleging GBS was contractually obligated to indemnify them from appellees' claim. Landmarks also raised a common law indemnity claim against GBS, which was the basis on which Landmarks' indemnity claim went to the jury, the trial court having ruled Landmarks was not a party to the contract in question so as to entitle it to a claim of contractual indemnification. The jury returned verdicts in favor of both Marcasco and Landmarks, to which the trial court added attorney fees and other costs.

Although GBS's enumerated error regarding the cross-claims encompasses several different matters, including the trial court's ruling allowing GBS's liability on the cross claims to go to the jury, the only enumerated issue argued and supported by citations of authority in GBS's initial brief addresses the absence of evidence to support the trial court's award of attorney fees and related costs to the cross claimants and the trial court's failure to allow GBS to cross-examine the witnesses on the claimed fees. The other issues raised in this enu-

meration are accordingly abandoned, see *Pennsylvania &c. Ins. Co.*, supra, and could not be resurrected from abandonment by GBS's arguments raised in its supplemental brief. See *Bicknell v. Joyce Sportswear Co.*, 173 Ga. App. 897, 898 (3) (328 SE2d 564) (1985). Thus, although the judgment is reversed insofar as the main case is concerned (see Division 1 (a), supra), GBS's failure to attack the judgment against it on Marcasco's contractual indemnity claim and Landmarks' common law indemnity claim leaves that part of the judgment conclusive as to GBS's liability on those claims. See generally *Citizens &c. Nat. Bank v. Weyerhaeuser Co.*, 152 Ga. App. 176, 180-181 (5) (262 SE2d 485) (1979); OCGA § 9-11-60 (h). GBS must therefore stand ready to indemnify the cross-claimants against any loss suffered in the litigation upon retrial of the main case. See *Buffington v. Sasser*, 184 Ga. App. 800, 801, 802 (2) (363 SE2d 2) (1987).

Since "[t]he 'law of the case' rule (see OCGA § 9-11-60 (h)) prevents the re-adjudication of factual issues in a case only where the evidentiary posture of the case has not changed since the prior adjudication was made [cit.]," *Harrison v. Dorsey*, 184 Ga. App. 870, 872 (1) (363 SE2d 151) (1987), it is not necessary here to address the amount of attorney fees awarded by the trial court since the evidentiary posture of the case will undoubtedly change upon retrial. However, addressing those matters which may recur upon retrial, we note the propriety of an award of attorney fees where the attorney properly states in place the hours spent, the charges per hour, and the reasonableness of the fee. On the issue raised by GBS regarding its right to cross-examine the witnesses testifying about attorney fees, the transcript reveals that, even assuming GBS requested the trial court to allow him to cross-examine Landmarks' witness, GBS failed to invoke a ruling from the trial court which this court can decipher as addressing GBS's objection. "The burden is on the party asserting error to show it affirmatively by the record. [Cit.]" *Ragan v. Smith*, 188 Ga. App. 770, 772 (2) (374 SE2d 559) (1988). Since GBS did not obtain the trial court's ruling on this matter, we cannot rule on whether the trial court properly or improperly disallowed GBS's cross-examination of Landmarks' attorney. See *Brookhaven Assoc. v. DeKalb County*, 187 Ga. App. 749, 750-751 (2) (371 SE2d 231) (1988).

However, as to Marcasco, the record clearly reflects GBS's request to cross-examine Marcasco's attorney/witness, GBS's objection to the trial court's failure to allow the cross-examination, and the trial court's ruling thereon. GBS specifically objected to the denial of its request to cross-examine Marcasco's attorney on the basis that that attorney also represented Maryland, and GBS sought to clarify whether the sums claimed were incurred on behalf of Marcasco, not Maryland.

It has long been the law that "[w]here counsel [make] statements

in their place, they may be received without verification *unless the same is required by the opposing party at the time.*" (Emphasis supplied.) *Caldwell v. McWilliams*, 65 Ga. 99, 101 (3) (1880). See also *Cross v. Cook*, 147 Ga. App. 695, 696 (3) (250 SE2d 28) (1978), in which it was stated that "[a]ttorneys are officers of the court and their statements in their place, *if not objected to,* serve the same function as evidence. [Cits.]" (Emphasis supplied.) Here the statements made by Marcasco's counsel in his place were clearly objected to by GBS on the basis that the amounts attested to were not incurred by Marcasco alone. Marcasco cites this court to several cases for the proposition that the reasonableness of attorney fees lies within the discretion of the trial court. We find those cases distinguishable from the case sub judice, however, because in none of the cases was the amount stated by the attorney/witness properly challenged by the other party. See *Crucet v. Bovis, Kyle & Burch*, 180 Ga. App. 765, 766 (350 SE2d 322) (1986) (no opposing affidavit on the issue of reasonable fees was properly filed so as to create fact question); *St. Amour v. Roberts*, 170 Ga. App. 717 (318 SE2d 313) (1984) (the fees in question were stipulated to by the parties and opposing party presented no evidence); *Overton-Green &c. System v. Cook*, 65 Ga. App. 274, 279 (16 SE2d 50) (1941) (Industrial Board entitled to determine reasonable attorney fees in absence of specific evidence of value of services). The only case cited by Marcasco which does bear on this point is *Harbin v. State*, 165 Ga. App. 631 (302 SE2d 386) (1983). In that criminal case, appellant's defense attorney had sought to cross-examine the district attorney on the DA's statement regarding the terms of a plea bargain between the State and an accomplice. After the trial court had denied his request, the defense attorney was allowed a thorough and sifting cross-examination of the accomplice. This court first addressed the appellant's arguments by noting that the DA's statement "was not in anywise evidentiary *as to the testimony of the witness[/accomplice]*" (emphasis supplied), id. at 633 (2), but subsequently concluded that "[n]o harmful error" was shown by the trial court's refusal to allow cross-examination because the subject matter of the DA's statement had no bearing on the appellant's case. Id. We do not agree with Marcasco that any reading of this opinion supports its argument that it is not error to deny an opposing party the right to challenge statements made by an attorney in his or her place upon proper and timely objection. We find utterly without merit Marcasco's argument that no error occurred here because GBS was required to make an "offer of proof" as to what a witness would state on cross-examination. See *Johnson v. Wills Mem. Hosp. &c.*, 178 Ga. App. 459, 461 (3) (343 SE2d 700) (1986).

Therefore, we find the trial court erred by denying GBS's request to cross-examine Marcasco's attorney/witness on the issue of the fees

actually incurred by Marcasco in the litigation of this case.

7. Landmarks contends the trial court erred by ruling that Landmarks was not a party to the contract between GBS and Marcasco, thus preventing Landmarks from pursuing its contractual indemnity claim. Landmarks asserts that the contract could not be construed as a matter of law but that interpretation of the contract here was a question of fact for the jury, and that the trial court erred by not allowing Landmarks' contractual indemnity claim to go out with the jury along with its common law indemnity claim.

Landmarks refers this court to Plaintiff's exhibit 14, the copy of the contract in evidence at the trial. The record reveals that exhibit 14 begins with a one-page document titled "Contract for Services," made on June 11, 1984, between GBS and Marcasco, for certain services in exchange for pay made pursuant to a price schedule, both outlined elsewhere. In the signature space for "Marcasco Company, Inc." was the name "Gary L. Brumage Senior Vice President The Landmarks Group General Corporation, Agent." Exhibit A to Plaintiff's exhibit 14 was titled "Building Maintenance Service Agreement," made on June 12, 1984, and was between GBS, as "Contractor," and the "owner," denominated therein as "Marcasco Company Incorporated" with "c/o The Landmarks Group General Corp" included over the address for Marcasco. The indemnification clause in question was in section five of this agreement.

" 'There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity. [Cit.]' [Cit.]" *Cincinnati Ins. Co. v. Page*, 188 Ga. App. 876, 878 (374 SE2d 768) (1988). Furthermore, as a contract of indemnity, the contract in issue must be strictly construed. OCGA § 10-7-3. Turning to the subject contract, the language used clearly denominates Marcasco as the "client" or "owner" with whom GBS was contracting. Although Landmarks is referenced in the "c/o" over the address in the building maintenance agreement, applying the usual and common signification to the words used, OCGA § 13-2-2 (2), "c/o," especially where inserted as here over an address, most often means "care of" and is "used esp[ecially] in addressing mail to a person reached through another person, a firm, or other agency." Webster's New Intl. Dictionary (2d ed., unabridged). Landmarks is also referenced in Brumage's signature and in various operations exhibits (which are included in the contract in the record but not in exhibit 14). Brumage signed the document, however, with the notation of "agent." Although the appendage of such a word, without more, is considered at law a word of description, *McRitchie v. Atlanta*

*Trust Co.*, 170 Ga. 296, 302 (2) (152 SE 834) (1930), case law has established that a party who signs as an "agent" cannot be held individually liable under the contract where the principal's name is disclosed and the contract is substantially in the name of the principal. Id. at 304 (3); see also *Georgia Cas. &c. Co. v. Hardrick*, 211 Ga. 709, 711 (1) (88 SE2d 394) (1955). Although the contract in issue does not specifically designate Landmarks as the agent for Marcasco, compare *McRitchie*, supra at 304 (3), "in all other respects the contract purported to deal with [Marcasco]," and thus the signature of Landmarks' officer in the place authorized for the owner/client's signature "indicated that [Landmarks] was acting only as agent." *Lawyers Co-op. Pub. Co. v. Huff*, 142 Ga. App. 45, 46 (234 SE2d 842) (1977). Since Landmarks' status was that of an agent so that the contract could not be enforced against it and Landmarks would not share in any of Marcasco's liability under the contract, it follows that the trial court did not err by holding that Landmarks was not a party to the contract so as to entitle Landmarks to the benefits for which its principal had contracted. See generally *Smiths' Properties v. RTM Enterprises*, 160 Ga. App. 102, 103 (2) (286 SE2d 334) (1981).

8. Our holding in Division 1 (a) renders it unnecessary for us to consider GBS's fifth enumeration.

*Judgments reversed. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 12, 1989 —
REHEARING DENIED OCTOBER 26, 1989.

*Eason, Kennedy & Associates, Richard B. Eason, Jr.*, for appellant (case no. A89A1277).

*Long, Weinberg, Ansley & Wheeler, J. M. Hudgins IV, Lance D. Lourie*, for appellant (case no. A89A1278).

*Drew, Eckl & Farnham, Samuel P. Pierce, Jr., James F. Cook, Jr.*, for appellant (case no. A89A1279).

*Schreeder, Wheeler & Flint, Timothy C. Batten*, for appellees.