# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALLEN SHEPPARD; EVELYN SHEPPARD,
In the matter of Allen Sheppard
versus CSX Transportation by his
wife Evelyn Sheppard, Guardian ad
Litem,

*Plaintiffs-Appellants,*

and

DSM CHEMICALS NORTH AMERICA,
INCORPORATED,

*Intervenor-Plaintiff,*

v.

CSX TRANSPORTATION,
INCORPORATED,

*Defendant-Appellee,*

and

CSX RAILROAD,

*Defendant.*

No. 02-2411

Appeal from the United States District Court
for the District of South Carolina, at Orangeburg.
Cameron M. Currie, District Judge.
(CA-01-4312-5-22, CA-01-4313-5-22)

Argued: September 24, 2003

Decided: October 27, 2003

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Vernon F. Dunbar, TURNER, PADGET, GRAHAM & LANEY, P.A., Columbia, South Carolina, for Appellants. Mark C. Wilby, FULCHER, HAGLER, REED, HANKS & HARPER, L.L.P., Augusta, Georgia, for Appellee. **ON BRIEF:** J. Arthur Davison, Michael N. Loebl, FULCHER, HAGLER, REED, HANKS & HARPER, L.L.P., Augusta, Georgia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This diversity action presents questions of state law stemming from an industrial accident that left Appellant Allen Sheppard severely injured and unable to work. On appeal we are confronted with two issues of state tort law: (1) whether Appellee CSX Transportation (CSX) owned or possessed the railcar scale house where the accident giving rise to the injuries occurred and (2) whether, regardless of ownership, CSX owed a duty of reasonable care to other subcontractors on the premises. The district court answered both questions in the negative, finding that CSX did not own the property in question and ruling that a duty did not arise between two subcontractors unless the first subcontractor creates the hazard that injures the second. Finding no error in the district court's application of Georgia tort law, we affirm its grant of summary judgment in favor of CSX.

I

On the morning of January 6, 1999, Allen Sheppard, a materials handler for Austin Industrial, was injured when he fell approximately eight feet into an uncovered railcar scale pit. Austin Industrial is a management services company subcontracted to provide such ser-

vices at an industrial site in Augusta, Georgia, jointly owned by DSM Chemicals (DSM) and PCS Nitrogen (PCS). At one time CSX owned the industrial site, but, by virtue of a Private Sidetrack Agreement, CSX sold its ownership rights in the site and maintained only a limited right to inspect and maintain the railcar scales.[1]

Although the industrial site was owned jointly by DSM and PCS, a CSX employee would enter the premises annually in order to perform maintenance on the railcar scale located in a pit on that property. The scale pit into which Sheppard fell was located inside the railcar scale house, and was uncovered that morning because an employee from CSX, Grover Wasdin, was on-site to calibrate the railcar scales. Before Wasdin inspected the scale on that morning, Austin Industrial employees removed a piece of plywood covering the scale pit, thus exposing an approximately two and one half foot by three and one half foot opening. As a safety precaution, Austin Industrial employees also opened the door to the scale house and placed an orange safety cone in front of the entrance in order to warn passers by that the scale had been exposed. Thus, with the door open and the orange cone placed in the doorway, persons nearing the scale house would have to stop to maneuver around the cone and would see that the plywood flooring had been removed. While at the industrial site, Wasdin was accompanied by Austin Industrial employees, and when he went into the scale pit, he was monitored by an outside observer, Reginald "Reggie" Byrnes, provided by Austin Industrial. The function of the outside observer was to monitor the CSX employee calibrating the scales and to ensure that person's safety from possible noxious gases.

January 6 was a cold morning in Augusta, and at some point either Byrnes or Wasdin moved the cone and closed the door to the railcar scale house to keep heat from escaping the scale house. Shortly thereafter, Sheppard opened the door to the scale house, stepped inside, and fell head-first into the open pit. Both Byrnes and Wasdin admit they may have closed the door but neither can remember with certainty. Wasdin, however, does deny moving the orange safety cone.

---

[1] The Private Sidetrack Agreement was actually between CSX and Arcadian Fertilizer. Although the record is unclear, DSM Chemicals and PCS Nitrogen are apparently successors to Arcadian.

Other Austin Industrial employees stated that the door could not have been closed without first moving the cone.

Sheppard filed an action in South Carolina state court alleging that CSX, which he alleges was the owner of the railcar scale house, both negligently created the hazard and negligently failed to warn him of the hazard that caused his injuries. Sheppard's wife, Evelyn, filed a second action based on a derivative claim of loss of consortium. CSX subsequently removed the cases to the United States District Court for the District of South Carolina, pursuant to 28 U.S.C.A. § 1441(a) (West 1994 & Supp. 2003), on the basis of diversity of citizenship.[2] *See* 28 U.S.C.A. § 1332 (West 1993 & Supp. 2003). The district court consolidated the cases, granted DSM's motion to intervene to assert a lien for worker's compensation benefits paid to Sheppard and denied CSX's motion to transfer venue to the Southern District of Georgia. On August 3, 2002, after the close of discovery, CSX filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The district court, in an order dated November 6, 2002, granted this motion, based on its finding that CSX did not own or operate the property in question and thus owed no duty to Sheppard under a theory of premises liability. The court also held that CSX did not owe a duty to warn Sheppard of hazards that it did not create. The Sheppards timely appealed, and we possess jurisdiction to hear this case under 28 U.S.C.A. § 1291 (West 1993).

II

Because federal jurisdiction in this matter arises from the diversity of citizenship of the parties, we apply the relevant state rule of decision. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). A district court, sitting in diversity, must apply the choice of law rules of the state in which it sits in determining which state's law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 489 (1941). Applying South Carolina choice of law rules, the district court properly chose to apply Georgia law because Georgia was the place where the alleged injury occurred. *See Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001)

---

[2]CSX is a Virginia corporation that maintains its principal place of business in Florida, while the Sheppards are residents of South Carolina.

(absent public policy concerns, South Carolina applies the doctrine of *lex loci delicti* for torts).

The Sheppards appeal the district court's order granting summary judgment in favor of CSX on their claims. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In deciding whether there is a genuine issue of material fact, "the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A mere scintilla of proof, however, will not suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (internal quotation marks omitted). A failure to produce evidence sufficient to permit a jury to find for the nonmovant plaintiff as to one of the elements of his cause of action renders all other issues of fact immaterial. *Celotex*, 477 U.S. at 323.

We review a district court's grant of summary judgment de novo. *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002). We also review a district court's interpretation of state law de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991). Sheppard essentially makes three arguments regarding CSX's duty to warn him of the hazard. We address each in turn.

## A. *CSX'S OWNERSHIP AND CONTROL*

### 1.

Sheppard first argues that the district court erred in finding that CSX did not own or control the railcar scale house. A negligence claim cannot lie unless a party can show "a duty or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Lau's Corp. v. Haskins*, 405 S.E.2d 474, 476 (Ga. 1991) (internal

quotation marks omitted). Sheppard claims that CSX had a duty to warn under a theory of premises liability. *See* Ga. Code Ann. § 51-3-1 (2003) (creating duty for landowners to exercise reasonable care towards invitees). To succeed on a claim for premises liability, however, Sheppard must first show that CSX owned the property in question.

A court attempting to determine if a party owns property should examine whether the party has "control of the property, whether or not [the party] has title thereto and whether or not [the party] has a superior right to possession of property which is in the possession or control of another." *Georgia Bldg. Serv., Inc. v. Perry*, 387 S.E.2d 898, 905 (Ga. Ct. App. 1989) (internal quotation marks and citations omitted). Sheppard has failed to adduce any evidence that CSX possessed anything more than a limited right to maintain the railcar scale itself.

The Private Sidetrack Agreement explicitly disclaims CSX's ownership in the railcar scale house and only provides that CSX "shall maintain the track scale apparatus." (J.A. at 331.) CSX employees were not permitted to wander freely around the industrial site, and were required at all times to follow DSM's rules and regulations. Furthermore, after the accident occurred, DSM and Austin Industrial implemented a number of remedial safety measures.[3] CSX was not contacted regarding these measures and did not participate in their formulation or implementation. CSX also did not play a role in creating the accident report. These facts all show that CSX did not maintain control or possession over the railcar scale house. CSX had a limited right to maintain the track scale apparatus, but it did not own or control the railcar scale house, where the accident occurred. Because CSX did not own the railcar scale house, it did not owe a duty to Sheppard under the doctrine of premises liability.

---

[3]Fed. R. Evid. 407 states that evidence of subsequent remedial measures cannot be admitted to show liability, but can be admitted for "another purpose, such as proving ownership, control."

2.

Sheppard next argues that CSX operated the railcar scale house in a joint venture with DSM Chemicals, and therefore is liable under some joint venture theory of liability. This theory of liability appears nowhere in the complaint and is not cognizable here. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (holding that "issues raised for the first time on appeal generally will not be considered"). Even if this theory were properly before us, it offers Sheppard no relief. Assuming that CSX is not immune from tort liability as a joint venturer with DSM as a result of DSM having paid Sheppard worker's compensation benefits,[4] any state law tort claim would be preempted by the Federal Employer's Liability Act (FELA), 45 U.S.C.A. § 51-60 (West 1986). If a joint venture did exist, Sheppard was an employee of CSX because he engaged in the activities of the joint venture. *See Seckinger & Co. v. Foreman*, 314 S.E.2d 891, 893 (Ga. 1984). If Sheppard was an employee of CSX, he would have to file any claim for injury suffered during the course of employment under FELA, not state tort law. *See New York Cent. R.R. Co. v. Winfield*, 244 U.S. 147, 153 (1917) (holding that FELA preempts state negligence and worker's compensation laws as applied to interstate rail carriers). Therefore, any state tort claim by Sheppard based on a joint venture theory of liability is preempted.

## B.  *CSX'S ROLE IN CREATING THE HAZARD*

Sheppard's final argument is that CSX had a duty to warn Sheppard of hazards on the premises because Sheppard was a fellow subcontractor. Sheppard relies primarily on decisions of the Court of Appeals of Georgia for the proposition that subcontractors owe a duty "in prosecuting [their] work, to use ordinary care not to cause injuries to others engaged in work on the same premises." *Soucy v. Alexander*, 323 S.E.2d 662, 664 (Ga. Ct. App. 1984); *see also Ragsdale Heating*

---

[4]*See Seckinger & Co. v. Foreman*, 314 S.E.2d 891, 893 (Ga. 1984) (holding that because one joint venturer "is liable for worker's compensation benefits for its joint venturer's employees" then "one joint venturer is immune from tort liability to its joint venturer's employees"); *but see* Ga. Code Ann. § 34-9-2(b) (2003) ("[T]his chapter shall not apply to any common carriers by railroad").

*& Air Conditioning, Inc. v. Terrell*, 539 S.E.2d 199, 200 (Ga. Ct. App. 2000) (recognizing duty of subcontractors to exercise reasonable care to avoid injury to other subcontractors), *Doke v. Dover Elevator Co.*, 263 S.E.2d 209, 211 (Ga. Ct. App. 1979) (same).

This line of cases, as the district court recognized, only creates a duty of reasonable care where the actions of the subcontractor create the hazard that causes the injury. Georgia law does not create a duty for subcontractors to warn of hazards that they are aware of but did not create. *Cf. Adcox Serv. Co. v. Adderhold*, 435 S.E.2d 262, 263 (Ga. Ct. App. 1993) (finding that independent contractors did not owe a duty to warn others of a hazard unless they created it). Therefore, the issue in this case is whether Sheppard presented a triable issue of fact that Wasdin created the hazard by closing the door and removing the cone.

Sheppard is correct that the issue of who closed the door is one of fact. "[I]t is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture," however. *Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995) (quoting *Ford Motor Co. v. McDavid*, 259 F.2d 261, 268 (4th Cir. 1958)); *accord Moore v. Teague*, 564 S.E.2d 817, 820 (Ga. Ct. App. 2002) ("[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant."). Sheppard's only evidence is that both Wasdin and Byrnes admitted that they might have closed the door, although neither remembers. Byrnes also admits he may have moved the cone, but Wasdin remained certain that he did not alter the cone's placement. Wasdin's denial regarding the cone, given the evidence that the cone had to be moved to close the door, in fact makes it more likely that Byrnes closed the door. Thus, the jury could, at most, merely speculate about whether it was Wasdin or Byrnes who moved the cone, closed the door, and created the hazard. Because Sheppard cannot prove that Wasdin created the hazard, he cannot show that CSX owed a duty of reasonable care to him.[5] CSX

---

[5]Sheppard believes that a tort rule finding a duty when the subcontractor created the hazard but not when the subcontractor knew of the hazard

cannot be found negligent if it did not owe a duty to Sheppard. The district court was correct in awarding summary judgment on this claim.[6]

## III

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

but fails to warn others is unsound as a matter of law and economics. This argument may or may not have merit, but is irrelevant to the task at hand. We apply Georgia law as it has been applied by the courts of Georgia, without questioning the law's wisdom. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[6]Sheppard also claims that CSX's safety manuals created a duty of reasonable care towards third parties. Although Georgia law does allow safety manuals to serve as evidence of negligence, *see Luckie v. Piggly-Wiggly Southern, Inc.*, 325 S.E.2d 844, 845 (Ga. Ct. App. 1984) (citations omitted), no Georgia case has held that safety manuals, by themselves, create a duty of reasonable care to third parties.